[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 12-11212

D.C. Docket Nos. 5:08-cv-00550-WTH-TBS; 8:00-cr-00469-T-27-TGW

DUDLEY BRYANT, JR.,

Petitioner-Appellant,

versus

WARDEN, FCC COLEMAN - MEDIUM,

Respondent-Appellee.

Appeal from the United States District Court for
the Middle District of Florida

(December 24, 2013)

Before HULL and MARTIN, Circuit Judges, and BOWEN,* District Judge.

HULL, Circuit Judge:

---

*Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

Petitioner Dudley Bryant appeals the district court's dismissal of his 28 U.S.C. § 2241 habeas petition, brought pursuant to the "savings clause" in 28 U.S.C. § 2255(e).  Bryant's appeal presents the issue to which this Court alluded in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999), and subsequently left undecided in Gilbert v. United States (Gilbert II), 640 F.3d 1293 (11th Cir. 2011) (en banc), cert. denied, 132 S. Ct. 1001 (2012), and Williams v. Warden, 713 F.3d 1332 (11th Cir. 2013).  The issue is whether the savings clause in § 2255(e) permits a federal prisoner to bring a § 2241 petition when he has established that his current 235-month sentence for an 18 U.S.C. § 922(g) conviction exceeds the 10-year statutory maximum penalty authorized by Congress under 18 U.S.C. § 924(a).

When a conviction has become final, a federal prisoner usually may challenge the legality of his detention only through a § 2255 motion.  However, the savings clause in § 2255(e) permits the prisoner to file a § 2241 habeas petition when a § 2255 motion was "inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e).  After review of the record, the briefs of the parties and the amicus, and having the benefit of oral argument, we conclude Bryant has satisfied the savings clause's requirements in § 2255(e).

Bryant has proven that his prior § 2255 motion was "inadequate or ineffective to test the legality of his detention" and that his § 2241 petition can now proceed under § 2255(e) because:  (1) from the time of his initial sentencing in

2

2002 throughout his first § 2255 proceeding in 2005, our Circuit's binding precedent in United States v. Hall, 77 F.3d 398, 401-02 (11th Cir. 1996), held that a concealed-firearm offense under Fla. Stat. § 790.01 was a "violent felony" under § 924(e) and squarely foreclosed Bryant's claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to Bryant's first § 2255 proceeding, the Supreme Court's decision in Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008), set forth a new standard to evaluate which crimes constitute violent felonies under § 924(e), and Begay, as interpreted by United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008), and United States v. Canty, 570 F.3d 1251, 1255 (11th Cir. 2009), overturned our Circuit precedent in Hall; (3) Begay's new rule is substantive and applies retroactively to Bryant's § 924(e) claim on collateral review; (4) as a result of pure § 924(e)-Begay error and retroactive application of Begay, Bryant's 235-month sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his claim of illegal detention above the statutory maximum penalty.  Accordingly, we vacate the district court's dismissal of Bryant's § 2241 petition and remand with instructions set forth herein.

     We first review the procedural history of Bryant's case, the savings clause in § 2255(e), and our Circuit's prior rulings about § 2255(e).  We then summarize the

3

five specific requirements a § 2241 petitioner must satisfy to proceed under § 2255(e) and explain why Bryant has satisfied them.

## I.    PROCEDURAL HISTORY

### A.    Indictment in 2000

In December 2000, a federal grand jury indicted Bryant on one count of knowingly possessing firearms and ammunition while being a convicted felon, "[i]n violation of [18 U.S.C. §§] 922(g)(1) and 924(e)."  While § 922(g)(1) prohibits the possession of any firearm or ammunition by a convicted felon, § 922 contains no penalty provision.  See 18 U.S.C. § 922(g).

The penalties for § 922(g) offenses are laid out in various provisions of § 924.  As to Bryant's § 922(g)(1) crime, § 924(a)(2) provides that a person who is convicted of knowingly violating § 922(g)(1) shall be "imprisoned not more than 10 years."  18 U.S.C. § 924(a)(2).  The statutory maximum penalty for a § 922(g)(1) crime is 10 years' imprisonment under § 924(a)(2).

Section 924(e), known as the Armed Career Criminal Act ("ACCA"), prescribes different and higher statutory penalties for the § 922(g)(1) felon-in-possession offense.  Section 924(e)(1) provides that, "[i]n the case of a person who violates section 922(g)" and "has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both," that person "shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).  The statutory

4

maximum under § 924(e)(1) is life in prison.  United States v. Brame, 997 F.2d 1426, 1428 (11th Cir. 1993).  The increased statutory penalties in § 924(e) are often referred to as the "ACCA enhancement."

Bryant's indictment gave him notice that the government intended to seek the increased statutory penalties in § 924(e) based on his prior concealed-firearm conviction and two drug convictions.  Bryant's indictment charged that he had these felony convictions: (1) a 1988 Florida conviction for delivery and possession of cocaine; (2) 1989 Florida convictions for carrying a concealed firearm and being a felon in possession of a firearm; and (3) 1991 Florida convictions for delivery and possession of cocaine and for obstructing or opposing an officer without violence.

## B.    Guilty Plea in 2001

In July 2001, Bryant pled guilty to his one-count indictment.  During the plea hearing, the district court informed Bryant that, because he had "3 qualifying felony convictions," he was facing a mandatory minimum sentence of 15 years and maximum sentence of life imprisonment, pursuant to § 924(e).  Bryant acknowledged his understanding of these penalties.

## C.    Presentence Investigation Report

Bryant's Presentence Investigation Report ("PSI") indicated that, because Bryant had 3 prior felony convictions for a "violent felony" or a "serious drug

5

offense," he was subject to a mandatory minimum penalty of 15 years' imprisonment and a statutory maximum penalty of life, pursuant to § 924(e).  In Paragraph 12 of the "Offense Conduct" section, the PSI referenced the same prior felony convictions as the indictment.

Bryant's base offense level was 24, pursuant to U.S.S.G. § 2K2.1, for his § 922(g)(1) felon-in-possession offense.  Bryant received a 4-level increase under § 2K2.1(b)(5) for possessing firearms in connection with another felony offense,[1] and a 1-level increase under § 2K2.1(b)(1)(A) for possessing three or more firearms, which resulted in an initial adjusted offense level of 29.

In the criminal history section, the PSI listed not only Bryant's three convictions shown in the indictment, but also his other convictions.  Among them was a 1988 felony conviction for "Burglary of a Structure."  Given all of his prior convictions, the PSI assigned Bryant 18 criminal history points and placed him into criminal history category VI.

Bryant's offense level of 29 and criminal history category of VI yielded a guidelines range of 151 to 188 months' imprisonment.  See U.S.S.G. ch. 5, pt. A, Sentencing Table (2000).

---

[1]Bryant's other felony offense was possession of cocaine and cocaine base.  The PSI also noted that the § 2K2.1(b)(5) enhancement was appropriate because Bryant transferred a firearm to another person and reasonably should have known that the firearm would be used in another felony.

The PSI also raised Bryant's offense level from 29 to 33 under U.S.S.G. § 4B1.4(b)(3)(B), the armed-career-criminal guideline. This armed-career-criminal classification did not change Bryant's criminal history category of VI, which was already the highest available. The offense level of 33, combined with a criminal history category of VI, resulted in a guidelines range of 235 to 293 months in prison.

## D.    Objections to the PSI and Sentencing Hearing in 2002

Bryant raised several objections to the PSI, including an objection to his classification as an armed career criminal. Bryant reiterated this objection at the sentencing hearing, arguing that his prior concealed-firearm conviction, which was referenced in the indictment, did not qualify as a "violent felony" under § 924(e)(2)(B) and, therefore, he should not be subject to the increased statutory maximum penalty of life in § 924(e)(1). The government countered that Bryant had "5 or 6 felony convictions which also could have been used" for § 924(e) purposes.

In response to the government's claim that Bryant had several other qualifying felony convictions, the district court stated: "I'm going through all of [Bryant's prior convictions], because there's a reference to 4 or 5 other felonies that could have been used from the government, and I'm going to find out if that's accurate." The district court then conducted a thorough examination of the felony

7

offenses listed in paragraphs 33 through 49 of the criminal history section of Bryant's PSI to determine which offenses could support an increased statutory maximum penalty under § 924(e). The district court's review was so thorough that the court specifically addressed all of Bryant's prior convictions, including his misdemeanor convictions, other than Bryant's obviously non-qualifying misdemeanor convictions for public drinking and attempting to cash stolen checks.

During the district court's review, the government and Bryant were afforded multiple opportunities to respond directly to the qualifying nature of the convictions. The parties agreed that Bryant's two prior convictions for delivery of cocaine were qualifying offenses pursuant to § 924(e). These were the two drug convictions listed in Bryant's indictment. The parties disagreed as to the qualifying nature of Bryant's prior concealed-firearm conviction, which was the third qualifying conviction listed in his indictment.

After its exhaustive review, the district court found that, "[a]t most we've got three" qualifying predicate convictions. The district court then asked the government, "What are the four or five that you were talking about?" In response, the government conceded, "Maybe they were non qualifying . . . ." The government then suggested that it had mistakenly counted non-qualifying drug offenses. The government did not object to the district court's finding that there were "[a]t most . . . three" qualifying predicate convictions, which were the two

8

qualifying drug convictions and the single concealed-firearm conviction.  The government never directed the district court to Bryant's prior burglary conviction.  In fact, the government failed to suggest at any point during the district court's thorough review of Bryant's prior convictions that his prior burglary conviction was a § 924(e)-qualifying offense.[2]

Ultimately, the district court overruled Bryant's objection to his concealed-firearm conviction based on this Court's decision in Hall, 77 F.3d at 401-02 (expressly holding that a conviction for carrying a concealed firearm under Florida law is a "violent felony" under § 924(e)(2)(B) because that offense posed a "serious potential risk of physical injury").[3]  Consequently, after its thorough review of all of Bryant's criminal history, the district court found only three § 924(e)-qualifying convictions:  two cocaine-delivery convictions and one concealed-firearm conviction.

---

[2]The only discussion related to Bryant's prior burglary conviction addressed whether that conviction was a "crime of violence" under the career offender portion of the sentencing guidelines.  The district court concluded that the "Burglary of a Structure" offense "clearly [was] not a crime of violence" because it involved burglary of a structure, not a dwelling.  The government did not object.

After reviewing several other convictions listed in the PSI, the court returned to the "Burglary of a Structure" offense and again found that the offense was not a "crime of violence" as defined by U.S.S.G. § 4B1.2.  Again, the government did not object.

[3]As discussed later, the Supreme Court's decision in Begay effectively overturned our precedent in Hall.  See United States v. Canty, 570 F.3d 1251, 1255 (11th Cir. 2009); United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).

9

This finding changed Bryant's statutory maximum penalty from 10 years to life in prison. The district court sentenced Bryant to 235 months in prison, the low end of the guidelines range, to be followed by 3 years of supervised release.

## E.    Direct Appeal in 2002

Bryant filed a direct appeal, raising only a suppression issue that he had preserved when he pled guilty. In October 2002, this Court summarily affirmed. See United States v. Bryant, 52 F. App'x 487 (11th Cir. 2002).

## F.    First § 2255 Motion in 2005

In October 2005, Bryant filed his first § 2255 motion to vacate his sentence. Bryant argued that he was "actually innocent" of the increased statutory penalties in § 924(e) because the government failed to prove, using Shepard[4]-approved documents, that his two Florida drug convictions qualified as "serious drug offense[s]" under § 924(e)(2)(A). Bryant also argued generally that the government failed to prove, using Shepard-approved documents, that he had a conviction for a violent felony under § 924(e)(2)(B). But, he did not specifically reference his concealed-firearm conviction in his first § 2255 motion.

The district court denied Bryant's first § 2255 motion as time-barred. Both the district court and this Court denied a Certificate of Appealability ("COA").

---

[4]Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

10

**G.      Second § 2255 Motion in 2008**

In September 2008, Bryant attempted to file a second § 2255 motion in the

district court, arguing that, under the Supreme Court's decision in Begay, he did

not qualify for the life statutory maximum penalty in § 924(e).  The district court

dismissed Bryant's second § 2255 motion because he failed to obtain the requisite

authorization from this Court required by 28 U.S.C. §§ 2244(b)(3)(A), 2255(h).

**H.      Request for Leave to File Successive § 2255 Motion**

In November 2008, Bryant sought authorization from this Court to file a

second or successive § 2255 motion, relying on Begay as a "new rule" of law for

purposes of § 2255(h).

In 1996, Congress substantially restricted second or successive collateral

attacks by enacting the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA").  Under § 2255(h), AEDPA bars the filing of a second or successive

§ 2255 motion unless this Court certifies that the proposed § 2255 motion is based

on (1) "newly discovered evidence that, if proven and viewed in light of the

evidence as a whole, would be sufficient to establish by clear and convincing

evidence that no reasonable factfinder would have found the movant guilty of the

offense"; or (2) "a new rule of constitutional law, made retroactive to cases on

collateral review by the Supreme Court, that was previously unavailable."  28

11

U.S.C. § 2255(h) (emphasis added); In re Dean, 341 F.3d 1247, 1248 (11th Cir. 2003).

In November 2008, this Court denied Bryant's application for leave to file a second or successive § 2255 motion, reasoning that Begay was not a "new rule of constitutional law" under § 2255(h) because it merely interpreted a substantive criminal statute, i.e., § 924(e).  (Emphasis added).

## I.    Present § 2241 Petition

In December 2008, in the district court, Bryant filed a pro se habeas corpus petition, pursuant to 28 U.S.C. § 2241, and a memorandum of law in support.  In his § 2241 petition, Bryant asserted that § 2255 had been "inadequate or ineffective" to challenge the legality of his 235-month sentence because our Circuit's precedent in Hall had foreclosed his § 924(e) claim during his first § 2255 motion in 2005.

Bryant contended that, under Begay and Archer, this Court's precedent in Hall was effectively abrogated; therefore, his concealed-firearm conviction did not qualify as a "violent felony" under § 924(e)(2)(B), and he did not have the three predicate convictions necessary to increase his sentence under § 924(e).  Bryant essentially argued his 235-month sentence exceeded his statutory maximum penalty of 10 years for his § 922(g) crime.  Bryant further argued the savings

12

clause in § 2255(e) permitted him to bring his § 2241 petition challenging his illegal sentence.

The district court dismissed Bryant's § 2241 petition.  Bryant timely appealed in 2012.[5]

## II.    PROCEDURAL DEFAULT

At the outset, one wonders why procedural default or waiver by Bryant does not resolve his case.  Bryant did not raise on direct appeal (or even in his first § 2255 motion) a claim that his concealed-firearm conviction was not a "violent felony" and that he was illegally sentenced above the 10-year statutory maximum in § 924(a) for that reason.

In § 2255 and § 2241 cases, this would result in a procedural default, unless Bryant can establish "cause and prejudice for his failure to assert his claims on direct appeal."  McCoy v. United States, 266 F.3d 1245, 1258-59 (11th Cir. 2001) (applying the procedural-default rule to a § 2255(a) motion to vacate); Sawyer v. Holder, 326 F.3d 1363, 1366 (11th Cir. 2003) (applying the procedural-default rule to a § 2241 habeas petition).

---

[5]Bryant does not need a COA to appeal the district court's dismissal of his § 2241 petition.  See Sawyer v. Holder, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003) (stating that, pursuant to 28 U.S.C. § 2253(c)(1)(B), a federal prisoner needs a COA only when proceeding under § 2255, not when proceeding under § 2241).

13

This Court has made clear that futility of a claim due to adverse Circuit precedent at the time of direct appeal does not constitute cause to excuse a procedural default in a first § 2255 motion.  McCoy, 266 F.3d at 1258-59 (applying the procedural default rule in a first § 2255 motion because petitioner did not raise his Apprendi[6] claim on direct appeal, even though the claim was rejected by "every circuit which had addressed the issue" at the time).  A ruling based on procedural default would obviate the need for us to address the difficult issue here about the savings clause in § 2255(e).

We cannot take that easy way out because the procedural-default rule is not jurisdictional, but is an affirmative defense that is subject to waiver by the government.  Howard v. United States, 374 F.3d 1068, 1073 (11th Cir. 2004); Shukwit v. United States, 973 F.2d 903, 904 (11th Cir. 1992); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990).  In the district court and now on appeal, the government has not asserted any procedural default as a defense to Bryant's § 2241 petition or his attempt to proceed under the § 2255(e) savings clause.  By every reasoned measure, the government intentionally has waived any procedural default defense.  See Shukwit, 973 F.2d at 904; Jordan, 915 F.2d at 629. Nothing herein should be read as indicating that Bryant has shown cause and prejudice.

---

[6]Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).

14

Before leaving procedural default, there is one more reason why Bryant's failure to raise this particular § 924(e)-violent felony claim in his first § 2255 motion does not matter here. As discussed below, the language of § 2255(e) states that the savings clause applies regardless of whether a federal prisoner "has failed to apply" for § 2255 relief or whether the sentencing court "has denied him" § 2255 relief. See 28 U.S.C. § 2255(e). Therefore, Bryant's failure to raise this particular § 924(e) claim in his first § 2255 motion does not preclude him from at least attempting to proceed under the savings clause in § 2255(e).

In addition, this Court recently held that whether the savings clause in § 2255(e) may open the portal to a § 2241 petition is a "threshold" jurisdictional issue that must be decided before delving into the merits of the petitioner's claim and the applicable defenses. See Williams, 713 F.3d at 1337-40 (concluding the savings clause is jurisdictional and, thus, limits the district court's subject-matter jurisdiction to entertain a § 2241 petition even when the government wishes to concede that the savings clause allows the § 2241 petitioner's claim); see also Sawyer, 326 F.3d at 1366-67 (concluding the savings clause in § 2255(e) did not apply to § 2241 petitioner's claim, but alternatively assuming that the petitioner had made the necessary showing to invoke the savings clause, and only then deciding the petitioner's claim was procedurally defaulted).

15

For these reasons, we must decide the jurisdictional question of whether the savings clause in § 2255(e) permits Bryant to bring a § 2241 petition claiming that his sentence is above the authorized statutory maximum penalty.

## III.   STANDARD OF REVIEW

"Whether a prisoner may bring a 28 U.S.C. § 2241 petition under the savings clause of § 2255(e) is a question of law we review de novo."  Williams, 713 F.3d at 1337.  The petitioner bears the burden of demonstrating that the § 2255 remedy was "inadequate or ineffective to test the legality of his detention" for purposes of § 2255(e).  Turner v. Warden, 709 F.3d 1328, 1333 (11th Cir.), cert. denied, 133 S. Ct. 2873 (2013).

## IV.   THE SAVINGS CLAUSE

Section 2255(e) states in full:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).  Section 2255(e)'s language—"An application for a writ of habeas corpus"—includes a petition filed under 28 U.S.C. § 2241, which Bryant filed here.

16

Section 2255(e) thus provides that a § 2241 petition "shall not be entertained" if a federal prisoner has failed to apply for relief by a § 2255 motion, or has already been denied such relief, "<u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention</u>."  28 U.S.C. § 2255(e) (emphasis added).  This quoted exception to § 2255(e)'s bar on a § 2241 petition is commonly referred to as the "savings clause."

Section 2255(e)'s language—"shall not be entertained"—speaks "in imperative terms regarding a district court's power to entertain a [§ 2241] claim," and "in enacting § 2255(e), Congress clearly restricted the subject-matter jurisdiction of the federal courts" over § 2241 petitions.  <u>Williams</u>, 713 F.3d at 1340.

And, as noted earlier, § 2255(e) by its own terms applies regardless of whether a federal prisoner "has failed to apply" for § 2255 relief or whether the sentencing court "has denied him" § 2255 relief.  Rather, the touchstone of the savings clause is whether a § 2255 motion would have been "inadequate or ineffective to test the legality of [the prisoner's] detention."  28 U.S.C. § 2255(e).

In prior cases, we found nothing in the legislative history explaining what this language in the savings clause means.  See <u>Wofford</u>, 177 F.3d at 1239-41; see also <u>Gilbert II</u>, 640 F.3d at 1307 ("The history behind the savings clause does not provide much help with its meaning.").  However, our decisions in <u>Wofford</u>,

17

Gilbert II, and Williams do discuss what the terms "inadequate or ineffective" and/or "detention" mean and what type of claim might open the savings clause portal to § 2241 jurisdiction. See Wofford, 177 F.3d 1236; Gilbert II, 640 F.3d 1293; Williams, 713 F.3d 1332. We review these decisions, which guide our analysis.

## V.    WOFFORD v. SCOTT (1999)

In our first case addressing the savings clause, we framed the issue before this Court as a broad one, asking "what circumstances other than those involving practical difficulties are covered by the savings clause[?]" Wofford, 177 F.3d at 1242. In light of § 2255's legislative history and other circuits' decisions, we identified only one situation, conviction of a non-existent offense, when the savings clause applies, and only speculated as to the possible existence of another in the sentencing context. See id. at 1244-45.

In Wofford, the petitioner, Charlie Wofford, pled guilty in federal court to a drug conspiracy and being a felon in possession of a firearm. Wofford, 177 F.3d at 1237. He was sentenced to 300 months for the drug conspiracy and 60 months, concurrently, for the felon-in-possession offense. Wofford's first § 2255 motion was denied. Id. This Court denied Wofford's application to file a second § 2255 motion because he failed to meet § 2255(h)'s exceptions to AEDPA's bar on second or successive § 2255 motions. Id. at 1238.

18

Wofford then filed a § 2241 habeas petition, raising, inter alia, a claim that his classification as a career offender under the guidelines "was improperly predicated upon the [district] court's belief that it could not examine the underlying offenses in making that determination." See id. Wofford did not claim, however, that his 300-month sentence exceeded the statutory maximum penalty. See id. The district court dismissed the § 2241 petition, and Wofford appealed. Id.

## A.    Meaning of the Savings Clause

On appeal, this Court described the savings clause's legislative history, which, as mentioned above, yielded no concrete answers. See id. at 1239-42. After canvassing other circuits' decisions, we determined that the best approach was the Seventh Circuit's decision in In re Davenport, 147 F.3d 605 (7th Cir. 1998). See Wofford, 177 F.3d at 1242-44. The Seventh Circuit's Davenport decision rejected the argument that the § 2255(e) savings clause allows a § 2241 habeas petition whenever AEDPA bars a second or successive § 2255 motion. See Wofford, 177 F.3d at 1244. The essence of habeas relief, and all that the Constitution requires, is to allow a prisoner "'a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence,'" either on direct appeal, in a first § 2255 motion, or in a successive § 2255 motion authorized by AEDPA. Id. (quoting Davenport, 147 F.3d at 609).

19

Citing Davenport, this Court in Wofford described, in dicta, two circumstances under which the savings clause may allow a federal prisoner to proceed under § 2241.  First, the Wofford panel opined, in dicta, that the savings clause "applies to a claim" when (1) a petitioner's claim "is based upon a retroactively applicable Supreme Court decision"; (2) "the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense"; and (3) "circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion."  Id. at 1244.  This analysis in Wofford covers actual innocence challenges akin to the post-Bailey[7] § 2241 petitions, such as when a Supreme Court decision subsequent to conviction means that a petitioner's offense conduct is no longer criminal.  See Williams, 713 F.3d at 1343 (discussing Wofford).

Second, Wofford observed, in dicta again, that the savings clause "might apply to some claims involving a 'fundamental defect' in sentencing where the petitioner had not had an opportunity to obtain judicial correction of that defect earlier."  Wofford, 177 F.3d at 1244 (quoting Davenport, 147 F.3d at 611).  We declined to decide, however, "whether the savings clause extends to [such]

_____

[7]Bailey v. United States, 516 U.S. 137, 144, 149, 116 S. Ct. 501, 506, 508 (1995) (holding that a person may be convicted of the crime of "using" a firearm under 18 U.S.C. § 924(c) only if he "actively employed" the firearm, not merely possessed it), superseded by statute, 18 U.S.C. § 924(c), as recognized in United States v. Timmons, 283 F.3d 1246, 1249, 1252 (11th Cir. 2002).

20

sentencing claims . . . or what a 'fundamental defect' in a sentence might be." Id. at 1244-45. "It is enough to hold, as we do, that the only sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent." Id. at 1245.

## B.    Application to Wofford's Claims

Applying these principles, we concluded that the savings clause did not cover Wofford's claims because (1) he "was not convicted of any crime which a retroactively applicable Supreme Court decision overturning prior circuit precedent has made clear is nonexistent"; (2) none of his sentencing claims rested upon a "circuit law-busting, retroactively applicable Supreme Court decision"; and (3) he had a "procedural opportunity to raise each of his claims and have it decided either at trial or on appeal." Id. at 1245. We concluded that Wofford was "attempting to use § 2241 simply to escape the restrictions on second or successive § 2255 motions." Id.

## VI.    GILBERT v. UNITED STATES (2011)

In our next savings clause decision, Gilbert II, we held definitively that the savings clause does not reach a guidelines-error sentencing claim when the prisoner's sentence does not exceed the statutory maximum. Gilbert II, 640 F.3d at 1295.

21

## A.    Procedural History in Gilbert's Case

In 1997, petitioner Ezell Gilbert pled guilty to two drug crimes, including possession of crack cocaine with intent to distribute. Id. at 1298. His offense involved 50 grams or more of crack cocaine and carried a maximum penalty of life imprisonment under 21 U.S.C. § 841(b)(1)(A) (1996). Id. At Gilbert's sentencing in 1997, the district court classified him as a career-offender under § 4B1.1 of the guidelines (which were mandatory at the time), in part due to his prior Florida § 790.01 concealed-firearm conviction. Id. at 1298-99. This career-offender status increased Gilbert's offense level and criminal history category, yielding a guidelines range of 292 to 365 months' imprisonment. Id. at 1299-1300. The district court sentenced Gilbert to 292 months in prison. Id. at 1300. Importantly, this sentence was less than Gilbert's statutory maximum sentence of life imprisonment for his drug offense. Id. at 1298-1300.

On direct appeal, Gilbert challenged his career-offender status, arguing that a concealed-firearm offense did not qualify as a "crime of violence" under § 4B1.2 of the guidelines. Id. at 1300. In 1998, in United States v. Gilbert (Gilbert I), 138 F.3d 1371, 1372 (11th Cir. 1998), this Court rejected Gilbert's argument, based on our 1996 Hall decision, and held that a concealed-firearm offense under Fla. Stat.

22

§ 790.01 "'presents a serious potential risk of physical injury'" within the meaning of § 4B1.2(a)(2)'s definition of "crime of violence."[8]  Gilbert I, 138 F.3d at 1372.

In 1999, Gilbert filed his first § 2255 motion but did not challenge his career-offender status under § 4B1.1 of the guidelines.  Gilbert II, 640 F.3d at 1301.  The district court denied the motion, and this Court denied a COA.  Id.

Ten years later in 2009, Gilbert filed a motion to reopen or amend his first § 2255 motion.  Gilbert wanted to challenge his § 4B1.1 career-offender status due to the intervening decisions from the Supreme Court in Begay and our Circuit in Archer.  We review Begay and Archer to place our subsequent en banc decision in Gilbert II in context.

## B.    Intervening Decisions in Begay and Archer

In 2008, the Supreme Court, in Begay, addressed § 924(e)(2)(B)(ii), which defines "violent felony" as a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(ii).  The question

---

[8]Section 4B1.2 of the guidelines defines the term "crime of violence" as follows:
> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

23

before the Supreme Court was whether a New Mexico conviction for driving under the influence ("DUI") qualified as a "violent felony" under the last clause in § 924(e)(2)(B)(ii). Begay, 553 U.S. at 139-48, 128 S. Ct. at 1584-88.

The Supreme Court determined in Begay that the term "violent felony" (1) does not apply to "every crime that presents a serious potential risk of physical injury to another," but (2) refers only to crimes that are "roughly similar, in kind as well as in degree of risk posed," to the offenses enumerated in § 924(e)(2)(B)(ii), namely, "burglary, arson, extortion, or crimes involving the use of explosives." Id. at 142-43, 128 S. Ct. at 1584-85 (internal quotation marks omitted). These enumerated crimes "all typically involve purposeful, violent, and aggressive conduct." Id. at 144-45, 128 S. Ct. at 1586 (internal quotation marks omitted). The Supreme Court concluded that (1) strict liability crimes such as DUI generally do not involve purposeful, violent, and aggressive conduct and can be committed without "any criminal intent at all," and (2) thus, New Mexico's DUI offense did not qualify as a "violent felony" under the last clause in § 924(e)(2)(B)(ii). Id. at 145, 148, 128 S. Ct. at 1586-88.

Several months after Begay, this Court decided Archer v. United States, concluding that Begay "clearly set forth a new standard to evaluate which crimes constitute 'violent felonies' and 'crimes of violence.'" Archer, 531 F.3d at 1352. Although Begay was a "violent felony" case under the § 924(e) statute, we applied

24

Begay to the "crime of violence" designation in the guidelines because the definitions of those terms are virtually identical.  Id.  In Archer, we held that Begay undermined Gilbert I to the point of abrogation, and that "the crime of carrying a concealed firearm may no longer be considered a crime of violence under the Sentencing Guidelines."  Id.

## C.    Gilbert II En Banc

Based on these intervening decisions in Begay and Archer, Gilbert's motion asked the district court either to reopen his first § 2255 proceeding or to construe his motion as a § 2241 petition and allow it to proceed under the savings clause in § 2255(e).  Id. at 1301-02.  After the district court denied relief, Gilbert appealed. Id. at 1302.

On rehearing en banc in Gilbert II, this Court framed the issue presented as follows: "Does the savings clause of § 2255(e) apply to claims that the sentencing guidelines were misapplied in the pre-Booker[9] mandatory guidelines era in a way that resulted in a substantially longer sentence that does not exceed the statutory maximum?"  Id. at 1306 (emphasis added).  We included the statutory-maximum qualification "to make it clear we are not deciding that issue, and we do not imply any view about how that issue should be decided when and if it is presented in some other case."  Id.

_____

[9]United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

## D.    Two Assumptions in Gilbert II

Before delving into its discussion, the en banc Court in Gilbert II made two assumptions.  Id. at 1302-05.  First, we assumed that, if Begay and Archer had been decided at the time of Gilbert's sentencing, his guidelines range would have been lower, and he would have received a lesser sentence than his current 292 months.  Id. at 1305.  Second, we assumed that, were we to rule in Gilbert's favor, he would receive a lesser sentence on remand, given his lowered guidelines range.  Id.  We stressed, however, that these were only assumptions and that we were "not so sure of either proposition."  Id. at 1302-05.[10]

## E.    Gilbert's Sentence Did Not Exceed the Statutory Maximum

Even assuming Gilbert's guidelines range and sentence would have been lower, we rejected Gilbert's argument that, because he was sentenced in the pre-Booker, mandatory-guidelines era, his statutory maximum sentence was the high end of his guidelines range, not the maximum penalty prescribed by statute.  Id. at 1306-07.  We indicated that a critical difference existed between pre-Booker

---

[10]Regarding the first assumption, we explained that the government had waived its right to insist on a mandatory life sentence as part of its plea bargain with Gilbert and that the government may not have done so "if it could not have counted on the career offender enhancement to double [his] sentence."  Gilbert II, 640 F.3d at 1303-04.  As to the second assumption, we stated that, given the post-Booker, advisory nature of the guidelines, Gilbert's sentence on remand "could be the same or even longer."  Id. at 1304.  We described the aggravated nature of Gilbert's two offenses and stated that, based on the 18 U.S.C. § 3553(a) factors, "[a] sentence of 292 months, or even a life sentence, would not be unreasonable or disproportionate to the crime."  Id. at 1305.

mandatory guidelines and statutory maximum penalties.  Id.  We explained that a "statutory maximum sentence" is a "punishment ceiling beyond which no defendant convicted for committing that particular crime may be sentenced regardless of the circumstances of the crime, regardless of the defendant's history, and regardless of the sentencing guidelines."  Id. at 1306.  "To the extent of any inconsistency [between the guideline range and the statute], the guidelines would have to bend to statutorily prescribed limits, not the other way around."  Id. at 1307.  We reiterated that Gilbert's statutory maximum penalty was life imprisonment for his crack cocaine offense under 21 U.S.C. § 841(b)(1)(A) (1996), without regard to his criminal history.  See id. at 1306.  Gilbert's statutory maximum penalty was not the top end of the correctly calculated guidelines range.  Id. at 1306-07.

## F.    Savings Clause Does Not Trump § 2255(h)

In addressing the meaning of the savings clause in § 2255(e), we also concluded in Gilbert II that the AEDPA restrictions in § 2255(h) on successive motions do not render a § 2255 remedy "'inadequate or ineffective'" for purposes of the savings clause in § 2255(e).  Id. at 1308.  Otherwise, we explained, "the savings clause would eviscerate [AEDPA's] second or successive motions bar [in § 2255(h)], and prisoners could file an endless stream of § 2255 motions, none of which could be dismissed without a determination of the merits of the claims they

27

raise." Id. We observed that other circuits addressing the relationship between § 2255(e) and (h) also refused to interpret the savings clause in § 2255(e) "in a way that would drop the § 2255(h) bar on second and successive motions, defeat its purpose, and render it pointless." Id. Moreover, according to fundamental canons of statutory construction, the "generally worded and ambiguous savings clause" in § 2255(e) could not override AEDPA's "specifically worded and clear statutory bar on second or successive motions" in § 2255(h). Id.

## G.    Finality Interests

The en banc Gilbert II Court then heavily emphasized the importance of finality interests in criminal convictions and balanced those finality interests against challenges to guidelines-based errors. We reasoned: "The critically important nature of the finality interests safeguarded by § 2255(h) . . . weighs heavily against an interpretation of the savings clause [in § 2255(e)] that would lower the second or successive motions bar and permit guidelines-based attacks years after the denial of an initial § 2255 motion." Id. at 1309. We explained that the "[s]entencing guidelines provisions are many and complex, the English language and those who use it are imperfect, and the case law about what various and sundry guidelines mean and whether they apply in different factual situations is in a constant state of flux." Id.

28

Gilbert sought to create a rule that "would apply to every type and kind of enhancement, of which there are scores in the sentencing guidelines." Id. at 1309-10. We stated, however, that allowing a guidelines-misapplication claim to proceed under the savings clause and avoid the AEDPA bar in § 2255(h) "would wreak havoc on the finality interests that Congress worked so hard to protect with the AEDPA provisions." Id. at 1310.

The en banc Gilbert II Court stressed that finality of judgments was one of the central principles behind AEDPA's restrictions on second or successive § 2255 motions. Id. After all, if second or successive § 2255 motions were not "greatly restricted," there would be "no end to collateral attacks on convictions and sentences." Id. at 1311 (internal quotation marks omitted and alteration adopted). We cited several Supreme Court cases explaining the importance of finality, such as McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454 (1991), which stated that a "'procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of underlying substantive commands.'" Gilbert II, 640 F.3d at 1311 (quoting McCleskey, 499 U.S. at 492, 111 S. Ct. at 1469). We concluded that, "for claims of sentence error, at least where the statutory maximum was not exceeded, the point where finality

29

holds its own against error correction is reached not later than the end of the first round of collateral review."[11] Id. at 1312 (emphasis added).

## H.    Savings Clause May Permit Actual-Innocence Claims

In Gilbert II, the en banc Court acknowledged that other circuits permit federal prisoners to use the savings clause to bring "actual innocence" claims in § 2241 petitions, such as claims originating under Bailey. Id. at 1318-19. We explained that the Wofford panel had Bailey-type, actual-innocence-of-the-crime claims in mind when it stated that the savings clause would permit a prisoner to bring a § 2241 petition based on a "retroactively applicable, circuit law-busting" Supreme Court decision establishing that he was "convicted of a nonexistent crime." Id. at 1319.

We cautioned, however, that this statement in Wofford was dicta because (1) all of Wofford's claims "were sentencing claims, 'none of which rested upon a circuit law-busting, retroactively applicable Supreme Court decision'"; and (2) "[a]ll of them could have been presented at trial or on appeal." Id. (quoting Wofford, 177 F.3d at 1245) (alteration omitted). We stated: "The actual holding of the Wofford decision, which is undoubtedly correct, is simply that the savings

---

[11]We added that a restrictive interpretation of the savings clause in § 2255(e) did not violate the Suspension Clause of the Constitution. Id. at 1316-17. We relied primarily on the Supreme Court's decision in Felker v. Turpin, 518 U.S. 651, 116 S. Ct. 2333 (1996), which held that the AEDPA restrictions imposed on state prisoners did not violate the Suspension Clause. Gilbert II, 640 F.3d at 1317.

clause does not cover sentence claims that could have been raised in earlier proceedings." Id. (citing Wofford, 177 F.3d at 1244-45).

## I.    Savings Clause May Permit Pure § 924(e)-Begay Error Claims

In Gilbert II, the en banc Court also appended a footnote explaining what the Wofford Court may have meant when it suggested that "the savings clause 'may conceivably' apply to some sentencing claims in some circumstances where there was a fundamental defect in sentencing that the prisoner had no opportunity to have corrected before the end of his § 2255 proceeding." Id. at 1319 n.20 (citing Wofford, 177 F.3d at 1244-45). We explained in dicta that "the Wofford panel may have had in mind . . . pure Begay errors, by which we mean errors in the application of the 'violent felony' enhancement, as defined in 18 U.S.C. § 924(e)(2)(B), resulting in a higher statutory minimum and maximum sentence under § 924(e)." Id. (emphasis added). We noted that a "Begay error in the classification of a prior conviction that was used to impose an enhanced sentence under § 924(e) would necessarily have resulted in the defendant being sentenced to a term of imprisonment that exceeded what would have been the statutory maximum without the error." Id. Thus, a pure Begay error "would fit within the government's concession that the savings clause applies to errors that resulted in a sentence beyond the statutory maximum that would have applied but for the error." Id. (emphasis added).

31

We reiterated that pure <u>Begay</u> error was <u>not</u> Gilbert's claimed error.  <u>Id.</u>
Gilbert's claimed error was "that his sentence calculation involved an <u>Archer</u> error
in the application of § 4B1.1 of the guidelines, and that error did not result in a
sentence beyond the statutory maximum."  <u>Id.</u>  What the en banc Court decided in
<u>Gilbert II</u> was that "the savings clause does not apply to sentencing errors that do
not push the term of imprisonment beyond the statutory maximum."  <u>Id.</u>

**J.      Gilbert Was Not Actually Innocent of Being a Career Offender**

We also rejected Gilbert's argument that he was actually innocent of being a
career offender under § 4B1.1 of the guidelines, explaining that Gilbert "was not
charged with, nor was he convicted of, being a career offender."  <u>Id.</u> at 1320.  "If
guidelines enhancements were crimes, they would have to be charged in the
indictment and proven to the jury beyond a reasonable doubt."  <u>Id.</u>  And, the
actual-innocence exception articulated in <u>Sawyer v. Whitley</u>, 505 U.S. 333, 112
S. Ct. 2514 (1992), did not apply to Gilbert because (1) his case was not a death
penalty case; (2) his claim was not a constitutional claim; (3) he would fail to meet
the requirement that, but for the error, he would have been statutorily ineligible for
the sentence he received; and (4) the narrow pre-AEDPA actual-innocence-of-
sentence exception did not survive after AEDPA was enacted.  <u>Id.</u> at 1320-22.

We pointed out in <u>Gilbert II</u> that, because of "the drug crimes for which he
was convicted, Gilbert was <u>statutorily eligible</u> for a sentence of between 10 years

32

and life."  Id. at 1322 (emphasis added).  And "[e]ven if the error in application of the § 4B1.1 career offender enhancement were undone, Gilbert would still be statutorily eligible for a sentence of 10 years to life."  Id. (emphasis added).

In Gilbert II, because Gilbert's sentence did not exceed his statutory maximum penalty of life imprisonment, we emphasized we were not deciding whether the savings clause would permit a prisoner to bring a § 2241 petition claiming his sentence exceeds the statutory maximum penalty:

> We do not decide whether a claim that the sentencing guidelines were misapplied may be brought in a first time § 2255 motion.  Nor do we decide if the savings clause in § 2255(e) would permit a prisoner to bring a § 2241 petition claiming that he was sentenced to a term of imprisonment exceeding the statutory maximum. What we do decide is that the savings clause does not authorize a federal prisoner to bring in a § 2241 petition a claim, which would otherwise be barred by § 2255(h), that the sentencing guidelines were misapplied in a way that resulted in a longer sentence not exceeding the statutory maximum.

Id. at 1323 (emphasis added).

## VII.   WILLIAMS v. WARDEN (2013)

Our third savings clause decision, Williams, did involve a prisoner's claim that his sentence exceeded the authorized statutory maximum penalty.  Williams, 713 F.3d at 1334.  In Williams, we faced the issue left open in Wofford and Gilbert II—whether the savings clause reaches claims that a sentence exceeds the statutory maximum.  See id.

33

In 1998, the petitioner, Albert Williams, was tried and convicted on one count of being a felon in possession of a firearm, in violation of § 922(g). See id. at 1335. Williams was subject to the increased statutory penalty of life in prison under § 924(e) due to his three prior Florida convictions: two for burglary of a dwelling and one for robbery. Id. Williams was sentenced to 293 months' imprisonment. Id. At trial and on direct appeal, Williams did not object to the application of increased statutory penalties under § 924(e)(1) based on the theory that his prior convictions did not qualify as "violent felonies" under § 924(e)(2)(B). Id. In 1999, this Court affirmed Williams's conviction and sentence. United States v. Williams, 182 F.3d 936 (11th Cir. 1999) (unpublished table op.).

In his first § 2255 motion, Williams argued that his counsel rendered ineffective assistance by failing to object to the use of his burglary convictions as predicate offenses to support his increased statutory penalties under § 924(e). Williams, 713 F.3d at 1335. He also argued that the Florida crime of burglary of a dwelling was not a "violent felony" under § 924(e)(2)(B). Id. The district court denied Williams's § 2255 motion and his request for a COA. Id. In 2004, this Court denied a COA and his motion for reconsideration, noting that, even if Williams's burglary conviction did not qualify as a violent felony, his other prior convictions supported the increased statutory penalties under § 924(e). Id.

34

After several other unsuccessful collateral attacks,[12] and after Begay was decided, Williams filed another § 2255 motion. Id. at 1336. In that motion, Williams argued that, under Begay, his burglary offenses did not qualify as violent felonies for § 924(e) purposes and, therefore, his 293-month sentence exceeded the 10-year statutory maximum for his § 922(g)(1) felon-in-possession conviction. Id. Denying relief, the district court concluded that it lacked jurisdiction over Williams's successive § 2255 motion because he had not moved this Court for authorization to file a successive § 2255 motion. Id. Williams did not appeal. Id.

In 2010, Williams filed a § 2241 habeas petition, arguing that the savings clause in § 2255(e) allowed the district court to hear his § 2241 petition and rule upon the Begay claim he raised in his previous § 2255 motion, i.e., that his prior burglary convictions did not qualify as predicate felonies under § 924(e) and that, as a result, his sentence was above the statutory maximum applicable to his § 922(g)(1) offense. Id. The district court dismissed Williams's § 2241 petition. Id. The government conceded in the district court and on appeal that the savings clause applied to the type of sentencing claim Williams sought to bring in his

---

[12]Specifically, relying on the Supreme Court's decisions in Shepard and Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990), Williams twice unsuccessfully sought relief under Federal Rule of Civil Procedure 60(b) from the denial of his first § 2255 motion. Williams, 713 F.3d at 1336. Williams also filed an unsuccessful § 2241 petition based on Shepard and Taylor. Id.

35

§ 2241 petition—a claim of pure-<u>Begay</u> error in a § 924(e) sentence that exceeds the statutory maximum penalty for a § 922(g) crime. <u>Id.</u>

## A.    Savings Clause is Jurisdictional

On appeal, this Court in <u>Williams</u> first addressed the question of whether we could accept the government's concession that the savings clause applied to Williams's claim. <u>Id.</u> at 1337-38. After a thorough discussion, we concluded that "in enacting § 2255(e), Congress clearly restricted the subject-matter jurisdiction of the federal courts" over § 2241 petitions. <u>Id.</u> at 1340. Because the savings clause in § 2255(e) was jurisdictional, the government could not waive the issue of its applicability. <u>See</u> <u>id.</u> at 1337-40.

## B.    The <u>Williams</u> Court Explained Why <u>Gilbert II</u> Did Not Apply

In determining whether the savings clause applied to Williams's § 924(e) claim, we first noted that <u>Gilbert II</u> "addressed—and explicitly limited its holding to—circumstances where a federal prisoner sought to attack a potential misapplication of the Sentencing Guidelines that resulted in a higher sentence, but one that remained within the statutory maximum." <u>Id.</u> at 1341. <u>Gilbert II</u> "expressly reserved the issue of whether the savings clause applied to [Williams's] species of claim," that is, claims that an erroneous application of § 924(e) increased a sentence above the statutory maximum penalty. <u>Id.</u> We then

concluded that <u>Wofford</u>, not <u>Gilbert II</u>, was "fatal to Williams's attempt to pass through the savings clause." <u>Id.</u>

## C.    <u>Wofford</u> and the Tension Between § 2255(e) and § 2255(h)

In <u>Williams</u>, this Court stated that the <u>Wofford</u> Court approved of the Seventh Circuit's <u>Davenport</u> because that approach "addressed and harmonized two serious concerns that are in some tension with one another." <u>Id.</u> On the one hand, "the essential function of habeas corpus is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence, and it may be necessary to apply the savings clause to some claims inadequately addressed in a first § 2255 motion in order to satisfy the Constitution's Suspension Clause." <u>Id.</u> (internal quotation marks and alteration omitted). On the other hand, "letting the savings clause apply too broadly would eviscerate [AEDPA's] bar on second or successive motions, which was intended to limit most prisoners to one clean shot at postconviction relief." <u>Id.</u>

We reasoned in <u>Williams</u> that "the savings clause cannot simply mean that every § 2255 motion that appears to have been incorrectly decided based on subsequent Supreme Court precedent may be revisited through a § 2241 habeas petition; if it did, then the bar on second or successive motions would effectively be written out of the statute . . . ." <u>Id.</u> "Yet by the same token, the circumstances delineated in [AEDPA's] § 2255(h)(1) and (2) <u>cannot be the only instances in</u>

37

which the § 2255 remedy is inadequate; if that were true, then it would be the savings clause that was rendered meaningless.  Id. at 1342-43 (emphasis added). We stated that a statute should not be interpreted "in such a way that any part of it becomes mere surplusage." Id. at 1343.

The Williams Court observed that Wofford, in dicta, described two different kinds of challenges to which the savings clause may conceivably apply that are not covered by § 2255(h) in AEDPA.  Id.  As discussed above, these two circumstances are: (1) when a retroactively-applicable Supreme Court's decision establishes that the petitioner was convicted of a "nonexistent offense," and circuit law squarely foreclosed the petitioner from raising that claim at "trial, [direct] appeal, or first § 2255 motion"; and (2) when a "fundamental defect in sentencing" occurred, and, again, the petitioner had no "opportunity to obtain judicial correction of that defect earlier." Id. (emphasis added) (quoting Wofford, 177 F.3d at 1244) (internal quotation marks omitted).

Referring to these two circumstances, the Williams Court stated:  "This interpretation of the savings clause harmonizes [the savings clause] with the bar on second or successive motions [in AEDPA] while also avoiding constitutional questions under the Suspension Clause." Id.

This Court in Williams concluded that the Wofford decision "establishes two necessary conditions—although it does not go so far as holding them to be

38

sufficient—for a sentencing claim to pass muster under the savings clause." Id. "First, the claim must be based upon a retroactively applicable Supreme Court decision." Id. Second, "the Supreme Court decision must have overturned a circuit precedent that squarely resolved the claim so that the petitioner had no genuine opportunity to raise it at trial, on appeal, or in his first § 2255 motion." Id. (emphasis added).[13]

This Court in Williams explained why, under the second condition, the savings clause requires a prisoner's § 2241 claim to have been squarely foreclosed by prior Circuit precedent at the time of his trial, direct appeal, and first § 2255 motion. Id. at 1347. We stated that, if an issue had not been decided against a prisoner's position by prior precedent, then his first § 2255 motion "would have been an adequate procedure for testing his claim." Id. "The courts would have heard the claim and decided its merits, unlike in the case where adverse precedent already existed and thus stare decisis would make us unwilling to listen to him." Id. (internal quotation marks and ellipses omitted).

In Williams, we cautioned, however, that an incorrect decision on a non-foreclosed claim does not render a proceeding inadequate or ineffective. Id. at

---

[13]In a footnote, we emphasized again that "the petitioner must point to then-binding circuit precedent, subsequently overruled by the Supreme Court, that barred his claim during his earlier proceedings. Otherwise, there was nothing preventing him from raising his claim on direct appeal or in his first § 2255 motion." Id. at 1344 n.4.

1348.  We explained that, "simply because a procedurally adequate test may get the answer wrong . . . cannot mean that a petitioner is entitled to utilize the savings clause to have his claim reevaluated still again in light of novel Supreme Court precedent."  Id.  We reiterated that what makes the § 2255 proceeding inadequate is when "erroneous circuit precedent foreclosed [the petitioner's] argument" at trial, direct appeal, or in his first § 2255 proceeding.  Id.

Similar to the Williams analysis, we observe that simply because a defendant faces a procedural bar in his first § 2255 motion—such as a limitations period or procedural default—this also does not render the first § 2255 motion inadequate or ineffective.  Otherwise, a defendant could sit on his § 924(e) claim at trial and direct appeal, have it procedurally barred in a first § 2255 motion, but much later raise it in a § 2241 petition through the § 2255(e) portal.  What makes the § 2255 proceeding "inadequate or ineffective" for petitioner Bryant is that he had no "genuine opportunity" to bring his § 924(e) claim because Circuit precedent squarely foreclosed that claim throughout his trial, direct appeal, and first § 2255 motion.  See Williams, 713 F.3d at 1343, 1348.

**D.    Circuit Precedent Did Not Foreclose Williams's Burglary Claim**

In Williams, we concluded that Williams could not "show that this Circuit's law foreclosed him from raising an objection to the treatment of his two Florida burglary convictions [under Fla. Stat. 810.02] as violent felonies under the

40

ACCA." Id. at 1343-44. During Williams's "direct and collateral attacks" from 1998 to 2004, no Eleventh Circuit precedent "squarely held that burglary of a dwelling, as defined in Fla. Stat. § 810.02, was a violent felony for ACCA purposes." Id. at 1344. "[I]t was an open question in this Circuit whether § 810.02 might categorically constitute a violent felony . . . under the so-called residual clause . . . [in] § 924(e)(2)(B)(ii)." Id. at 1345. "Only after both Williams's direct appeal and his collateral attack did this Court decide" that burglary of a dwelling under Florida law qualified as a violent felony under the last clause in § 924(e)(2)(B)(ii). Id.

The Williams Court concluded that "no Circuit precedent on the books during Williams's collateral attack foreclosed his argument and rendered his § 2255 motion an ineffective test of his claims." Id. (emphasis added). Stated differently, "there was no adverse precedent at the time of Williams's § 2255 motion that would have made us unwilling to listen to his claim." Id. at 1347. Even if Williams's initial § 2255 proceeding had resulted in the wrong answer, this was "not dispositive of the question of whether Williams now may pursue relief through the savings clause." Id. at 1348. "[W]hat is dispositive is that his claim was not foreclosed at the time by binding Eleventh Circuit precedent that Begay overruled or abrogated." Id.

41

In Williams, we rejected the petitioner's attempt to use Begay as the "'circuit law-busting, retroactively applicable Supreme Court decision'" demanded by Wofford. Id. at 1346. We explained that, for Begay to be "circuit-law busting" in the savings clause context, "we must find that Begay overturned circuit precedent specifically addressing the claim Williams now asserts [in his § 2241 petition]—namely, that Fla. Stat. § 810.02 [the burglary statute] is not a violent felony for ACCA purposes." Id. at 1347 (emphasis added) (internal quotation marks omitted).

Begay was not "circuit law-busting" in Williams's case because (1) Begay "changed the analytical framework for determining whether a given state offense is a violent felony at a high level of abstraction" and "did not abrogate all of this Court's pre-Begay violent-felony jurisprudence," (2) Begay would not have necessarily abrogated any Circuit precedent holding that Florida's burglary statute was a violent felony; and, (3) in any event, "there was no circuit precedent for Begay to bust" at the time Williams's first § 2255 proceeding ended in 2004. Id. at 1345, 1347 (emphasis added).

For all of these reasons, we determined that "Williams's first § 2255 motion was not 'inadequate or ineffective to test the legality'" of his increased statutory penalties under § 924(e). Id. at 1348 (quoting § 2255(e)).

42

**E.     Williams Did Not Show Miscarriage of Justice**

We also rejected Williams's argument that he could open the savings clause portal using an alternative, miscarriage-of-justice standard set forth in Davis v. United States, 417 U.S. 333, 346-47, 94 S. Ct. 2298, 2305 (1974) (holding that, where a precedent later establishes that the prisoner was convicted and punished "for an act that the law does not make criminal," he may seek collateral relief in his first § 2255 motion despite losing the issue on direct appeal). Williams, 713 F.3d at 1345. First, we reasoned that Williams was not convicted of a "nonexistent offense," in Wofford's sense of the term, because he was "not asserting that he is 'actually innocent' of either his possession of a firearm offense or his underlying burglary offenses, nor could he." Id. at 1345-46. "[H]e is asserting only legal innocence: that his burglary convictions should not have been considered violent felonies under the ACCA." Id. at 1346.

Second, in Williams we said that Davis involved "a different issue: whether a claim 'unsuccessfully litigated on direct review' could be 'asserted on collateral attack.'" Id. (quoting Davis, 417 U.S. at 342, 94 S. Ct. at 2303 (ellipses omitted and alteration adopted)). In Davis, the Supreme Court held that, "where a precedent later establishes that the prisoner was convicted and punished 'for an act that the law does not make criminal,' he may seek collateral relief in his first § 2255 motion despite losing the issue on direct appeal." Id. (quoting Davis, 417

43

U.S. at 346-47, 94 S. Ct. at 2305).  But, "Davis did not address whether the savings clause permits what is effectively a second or successive motion under the miscarriage of justice standard."  Id.

The Williams Court concluded that the miscarriage-of-justice standard in Davis was inapplicable to Williams's sentencing claim concerning the savings clause.  Id.

## VIII.  SYNTHESIS OF WOFFORD, GILBERT II, & WILLIAMS

Wofford, Gilbert II, and Williams guide us on what the statutory terms in § 2255(e)'s savings clause mean and how to read § 2255(e) in a way that does not eviscerate or undermine § 2255(h)'s restrictions on second or successive § 2255 motions but also affords some meaning to the savings clause.

To show his prior § 2255 motion was "inadequate or ineffective to test the legality of his detention," Bryant must establish that (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed Bryant's distinct prior state conviction that triggered § 924(e) and had squarely foreclosed Bryant's § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court's decision in Begay, as extended by this Court to Bryant's distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed Bryant's § 924(e) claim; (3) the

44

new rule announced in Begay applies retroactively on collateral review; (4) as a result of Begay's new rule being retroactive, Bryant's current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches his pure § 924(e)-Begay error claim of illegal detention above the statutory maximum penalty in § 924(a).

We now explain why Bryant has satisfied each of these requirements.

## IX.    BRYANT'S § 924(e) CLAIM

### A.    Foreclosure by Circuit Precedent

As to the first requirement, Bryant has carried his burden to show that his specific § 924(e) claim in his § 2241 petition was squarely foreclosed by binding Circuit precedent throughout his sentencing in 2002, direct appeal in 2002, and first § 2255 proceeding in 2005.  Throughout that time, the law in this Circuit squarely held that a concealed-firearm offense under Fla. Stat. § 790.01 was a "violent felony" under § 924(e).  See Hall, 77 F.3d at 401.[14]  As stated in Williams, what makes a § 2255 motion inadequate or ineffective is when "erroneous circuit precedent foreclosed [the petitioner's] argument."  Williams, 713 F.3d at 1348. Because our Circuit precedent in Hall squarely foreclosed Bryant's § 924(e) claim,

_____

[14]Throughout the record, as well as in our relevant case law, the terms "concealed weapon" and "concealed firearm" are used interchangeably.  The term "concealed firearm" is more appropriate, however.  Under the pertinent Florida statute, carrying a concealed "weapon" is merely a misdemeanor, while carrying a concealed "firearm" is a third-degree felony.  Fla. Stat. § 790.01(1)-(2).  According to the indictment and the PSI, Bryant was convicted of carrying a concealed firearm.

45

he had no "genuine" procedural opportunity to test whether his Florida concealed-firearm crime was a "violent felony" that could be used as a predicate conviction to increase his statutory maximum penalty under § 924(e).  See id. (emphasis added).  Williams tells us that, before Begay, "stare decisis would make us unwilling . . . to listen to him."  See id. at 1347 (internal quotation marks omitted).

## B.    Begay's Circuit-Busting Effect

As to the second requirement, Bryant has established that Begay, as extended by Archer and Canty, busted our precedent in Hall that had foreclosed his § 924(e) claim about his Florida concealed-firearm conviction.

We recognize that this Court in Williams stated that Begay "is not circuit law busting in Wofford's sense of the term" because the Supreme Court in Begay had only "changed the analytical framework for determining whether a given state offense is a violent felony at a high level of abstraction by crafting its 'purposeful, violent, and aggressive' test."  Id.  The Williams Court explained that Begay had not abrogated "all of this Court's pre-Begay violent felony jurisprudence," and as to Williams specifically, it was "not at all clear that Begay would have abrogated any circuit precedent holding § 810.02 [burglary] was a violent felony."  Id.  In other words, Begay's abstract statutory interpretation of § 924(e)'s residual clause in the context of its review of New Mexico's DUI statute did not necessarily dictate that Williams's distinct prior Florida burglary conviction could no longer

46

qualify as a predicate violent felony. See id. Under Williams's analysis, Circuit precedent would still "squarely foreclose" any Begay-based sentencing claim unless and until Begay's holding was extended to a discrete situation involving a specific prior state conviction.[15] Begay essentially provided the basic legal foundation for raising a new sentencing challenge based on the Supreme Court's interpretation of the language of § 924(e)(2)(B)(ii).

Unlike the petitioner in Williams, Bryant has shown that our Court has already extended Begay's holding to his distinct prior state conviction, to wit, his § 790.01 concealed-firearm conviction in Florida. In Archer, this Court concluded that under Begay a concealed-firearm offense was not a "crime of violence" under the guidelines. See Archer, 531 F.3d at 1352. Subsequently, in United States v. Canty, 570 F.3d 1251, 1254 (11th Cir. 2009), on direct appeal, the defendant expressly argued (and the government acknowledged) that, after Begay and Archer, a Florida conviction for carrying a concealed firearm should not be treated as a § 924(e) violent felony. After review in Canty, we agreed and held that

---

[15]We note that, when the Supreme Court announces new rules of law, courts are bound by those decisions from the date of the decision. However, because the Supreme Court's decision in Begay did not clearly abrogate all of this Court's pre-Begay violent felony jurisprudence, we do not decide the case wherein a rule articulated by the Supreme Court clearly overrules or undermines our prior precedent such that a subsequent Canty-like decision is required to express the circuit-busting effect of the Supreme Court's decision. We only decide, for the purposes of this case, that the DUI-related rule pronounced in Begay was so unrelated to the concealed-firearm offense here that a decision of this Court (or the Supreme Court) was required to show the Begay decision busted our precedent in Hall.

"carrying a concealed weapon is not a violent felony that may be used as a predicate conviction to enhance a defendant's sentence under [§ 924(e)]." Id. at 1255.

While Canty did not expressly mention our 1996 decision in Hall, Canty's holding regarding Florida's concealed-firearm offense directly implies that our precedent in Hall was undermined to the point of abrogation by Begay and Archer.

In addition to showing that Archer and Canty busted our precedent in Hall, Bryant has also shown that this "busting" did not occur until after Bryant's trial, direct appeal, and initial § 2255 proceedings had ended. While Begay may have undermined the test we had used to evaluate whether a specific state conviction qualified as a violent felony under § 924(e), Circuit precedent still squarely foreclosed Bryant's current § 924(e) claim until we then applied those abstract principles from Begay specifically to Florida's concealed-firearm offense in Archer and Canty. Thus, the issuance of our decisions in Archer and Canty mark the correct point at which Bryant's current § 924(e) claim was no longer "squarely foreclosed" by Circuit precedent, as required under § 2255(e)'s savings clause, and our Hall precedent was busted.[16]

---

[16]We point out something we are expressly not deciding today. Bryant was sentenced in the Middle District of Florida, Tampa division, and properly filed his § 2241 petition in his incarceration district, the Middle District of Florida, Ocala division. This Circuit's precedent governed Bryant's initial sentence, his § 2255 motions, and his § 2241 petition. We have no

Before moving on and for completeness, we add that the recent Supreme Court decision in Sykes v. United States, 564 U.S. __, 131 S. Ct. 2267 (2011) does not affect our holdings in Archer in 2008 and Canty in 2009 regarding Florida's concealed-firearm offense. Sykes "substantially circumscribed the reach of Begay so that its similar-in-kind requirement no longer applies to intentional crimes like Fla. Stat. § 810.02" (burglary). Williams, 713 F.3d at 1347 n.6. For intentional crimes, the central inquiry under § 924(e)(2)(B)(ii) is "whether the offense 'presents a serious potential risk of physical injury to another' comparable to the risk posed by the ACCA's enumerated crimes." Id. (emphasis added) (quoting Sykes, 564 U.S. at __, 131 S. Ct. at 2273). Sykes reserved Begay's "purposeful, violent, and aggressive" inquiry for crimes with a mens rea of strict liability, negligence, or recklessness. Sykes, 564 U.S. at __, 131 S. Ct. at 2275-76; United States v. Chitwood, 676 F.3d 971, 979 (11th Cir. 2012) ("Sykes makes clear that Begay's 'purposeful, violent, and aggressive' analysis does not apply to offenses that are not strict liability, negligence, or recklessness crimes . . . ."). In Sykes, the Supreme Court concluded that intentional vehicular flight under Indiana law was a

occasion to address or decide any issues specific to another scenario, where the § 2241 petition is filed in this Circuit, but the § 2241 petitioner was originally sentenced in another circuit under that circuit's law and his first § 2255 motion would thus have been filed in another circuit.

49

"violent felony" under § 924(e)(2)(B)(ii).  Sykes, 564 U.S. at __, 131 S. Ct. at 2270.

Unlike intentional vehicle flight, carrying a concealed firearm under Florida law is akin to a strict-liability crime and, therefore, continues to fall under the "purposeful, violent, and aggressive" framework announced in Begay.  See Dorelus v. Florida, 747 So. 2d 368, 371 (Fla. 1999) ("[T]he specific intent of the defendant to conceal the weapon is not an element of the [Fla. Stat. § 790.01] crime . . . ."); see also Archer, 531 F.3d at 1351 ("[The] lack of required specific intent makes carrying a concealed weapon [under Fla. Stat. § 790.01] more similar to drunk driving . . . .").  Thus, Sykes did not undermine Begay, Archer, and Canty insofar as they apply to Florida's concealed-firearm offense.

## C.    Begay Applies Retroactively

As to the third requirement, Bryant has established that the Supreme Court's decision in Begay applies retroactively.  Although our precedent in Hall was busted, Bryant still cannot rely on Begay's new rule in any collateral review unless the rule announced in Begay applies retroactively.  We previously suggested, tangentially, that the Begay decision may apply retroactively to cases on collateral review in a first post-conviction motion context; however, we have never held so expressly.  See Zack v. Tucker, 704 F.3d 917, 925 (11th Cir.) (en banc) (discussing the § 2244(d)(1) statute of limitations in a § 2254 case), petition for cert. filed,

(U.S. June 7, 2013) (No. 12-10693).[17] We now hold that the new rule announced in Begay applies retroactively for purposes of a first § 2255 motion and the § 2241 petition Bryant seeks to bring under § 2255(e).

When the Supreme Court announces a new rule, "a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding," Chaidez v. United States, 568 U.S. __, __, 133 S. Ct. 1103, 1107 (2013), with two exceptions. First, "[n]ew substantive rules generally apply retroactively" on collateral review, including "decisions that narrow the scope of a criminal statute by interpreting its terms" and "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S. Ct. 2519, 2522 (2004). The Supreme Court explained that such substantive rules apply retroactively "because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." Id. at 352, 124 S. Ct. at 2522-23 (emphasis added) (internal quotation marks omitted).

---

[17]We recognize that, in Spencer v. United States, 727 F.3d 1076 (11th Cir. 2013), this Court applied Begay retroactively to a first § 2255 motion based on the government's concession, stating: "The government agreed at oral argument that Begay applies retroactively, as it has in other cases. Given that concession, we apply Begay here." Spencer, 727 F.3d at 1096 (internal citations omitted) (citing Caspari v. Bohlen, 510 U.S. 383, 389, 114 S. Ct. 948, 953 (1994) ("[A] federal court may, but need not, decline to apply Teague['s nonretroactivity analysis] if the [government] does not argue it.")). In this case, we rule on the merits of the retroactivity issue.

A new rule is procedural, not substantive, if it "regulate[s] only the manner of determining the defendant's culpability."  Id. at 353, 124 S. Ct. at 2523.  Such procedural rules "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."  Id. at 352, 124 S. Ct. 2523.  New procedural rules will not apply retroactively unless they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  Id. (internal quotation marks omitted); see also Teague v. Lane, 489 U.S. 288, 311, 109 S. Ct. 1060, 1076 (1989) (plurality opinion).

"That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished."  Schriro, 542 U.S. at 352, 124 S. Ct. at 2523 (internal quotation marks omitted).  "This class of rules is extremely narrow," id., so much so that nine years ago the Supreme Court stated it was unlikely that any more "watershed" procedural rules would emerge in the future, id.; see Howard v. United States, 374 F.3d 1068, 1080 (11th Cir. 2004) ("[T]he second Teague exception is so tight that very few new rules will ever squeeze through it.").

The new rule announced in Begay is substantive rather than procedural because it "narrow[ed] the scope" of § 924(e) "by interpreting its terms,"

52

specifically, the term "violent felony."  See Schriro, 542 U.S. at 351-52, 124 S. Ct. at 2522.  As discussed above, Begay held that, as to strict liability, negligence, or recklessness crimes, the last clause in § 924(e)(2)(B)(ii) applies only to crimes "roughly similar, in kind as well as in degree of risk posed," to the offenses enumerated in § 924(e)(2)(B)(ii) (burglary, arson, extortion, or crimes involving the use of explosives).  Begay, 553 U.S. at 142-43, 128 S. Ct. at 1584-85 (internal quotation marks omitted).  Begay thus narrowed the class of people who are eligible for the § 924(e) increased statutory maximum of life for a § 922(g) crime.  As a result, a significant risk exists that some defendants, like Bryant, who were sentenced before Begay have erroneously received the increased penalties under § 924(e) and now are serving prison terms above the otherwise applicable statutory maximum of 10 years—"a punishment that the law cannot impose" upon them.  See Schriro, 542 U.S. at 352, 124 S. Ct. at 2522-23.

Other circuits also have concluded (albeit in the context of a first § 2255 motion) that Begay announced a substantive new rule that applies retroactively.  See Jones v. United States, 689 F.3d 621, 625-26 (6th Cir. 2012) (explaining that, although Begay's new rule did not alter the underlying elements of the crime, the new rule nonetheless "involved the substantive construction of a criminal statute" that determined the maximum lawful punishment certain classes of defendants may receive) (internal quotation marks and alteration omitted)); Welch v. United States,

53

604 F.3d 408, 413-15 (7th Cir. 2010) (noting that Begay "did not narrow any of the elements of a criminal offense" and that, "[w]hen the elements of a crime are narrowed, that change serves to prohibit any punishment for the conduct"; but Begay nonetheless altered the statutory maximum amount of punishment that the law can impose for a § 922(g) crime, and thus Begay "prohibits some of that punishment").

Before leaving retroactivity, one clarification is needed. The Supreme Court's above jurisprudence about retroactivity generally is quite different from the stricter, statutory retroactivity requirements in 28 U.S.C. § 2255(h), which govern second or successive § 2255 motions. To qualify as a retroactive "new rule of constitutional law" under § 2255(h), "the Supreme Court itself must make the rule retroactive." In re Anderson, 396 F.3d 1336, 1339 (11th Cir. 2005). "[I]t is not enough that this Court may retroactively apply a new rule of constitutional law or hold that a new rule of constitutional law satisfies the criteria for retroactive application set forth by the Supreme Court . . . ." Id.

The Fifth Circuit in In re Bradford concluded that Begay was not retroactive for purposes of § 2255(h) because there were no Supreme Court cases "declaring" it to be retroactive. In re Bradford, 660 F.3d 226, 231 (5th Cir. 2011). While that is true, the retroactivity issue here is not about a second or successive motion under § 2255(h). Rather, the issue here is whether Bryant can bring a § 2241 petition

54

under § 2255(e) and whether <u>Begay</u> applies retroactively to a § 2241 petition, which we conclude it does.

**D.    Bryant's Sentence Exceeds the Statutory Maximum**

As to the fourth requirement, Bryant has established that his sentence exceeds the authorized statutory maximum penalty.  As a result of the retroactive decision in <u>Begay</u> and our decisions in <u>Archer</u> and <u>Canty</u>, Bryant's concealed-firearm conviction under Fla. Stat. § 790.01 is not a "violent felony" within the definition of § 924(e)(2)(B).  This means that Bryant does not have the three predicate felonies required to increase his statutory maximum sentence from 10 years in § 924(a)(2) to life imprisonment in § 924(e).  Bryant's 235-month sentence thus exceeds his statutory maximum penalty of 10 years for his 922(g)(1) offense.  Bryant has proven a "pure <u>Begay</u> error," as aptly denominated in <u>Gilbert II</u>.

Before leaving the "statutory maximum" question, we address the government's argument that Bryant's prior 1988 burglary conviction could be used as a third § 924(e) predicate felony and thus his sentence does not exceed the statutory maximum penalty.

We disagree because the government waived this burglary issue at the initial sentencing.  At sentencing, the district court found that Bryant had at most three qualifying predicate convictions, which were the concealed-firearm conviction and

55

the two drug convictions listed in the indictment. The government never objected to that finding by the district court. Despite repeated opportunities to do so at sentencing, the government also never suggested at any point that Bryant's 1988 burglary conviction could serve as a § 924(e)-qualifying felony. At no time during Bryant's direct criminal proceedings did the government ever rely on the burglary conviction as a predicate felony for § 924(e) purposes. See Canty, 570 F.3d at 1257 (stating that, while the government was "entitled to an opportunity to offer evidence and seek rulings from the sentencing court in support of" a § 924(e) application," the government was "entitled to only one such opportunity, . . . it had that opportunity at the sentencing hearing," and "when given the opportunity, the Government failed to voice any objection"); see also United States v. Petite, 703 F.3d 1290, 1292 n.2 (11th Cir. 2013) ("The government cannot offer for the first time on appeal a new predicate conviction in support of an enhanced ACCA sentence."), petition for cert. filed, (U.S. June 13, 2013) (No. 12-10831). Therefore, we deny the government's request to substitute the burglary conviction.

## X.    SCOPE OF THE SAVINGS CLAUSE

Because Bryant has met the above four requirements derived from Wofford, Gilbert II, and Williams, we now examine the fifth requirement which involves the issue left open in Gilbert II. That is, whether the savings clause reaches not only an actual-innocence claim, but also Bryant's sentencing claim that his § 924(e)-

56

erroneous sentence exceeds the statutory maximum penalty in § 924(a) for his § 922(g) crime.

## A.    Other Circuits' Decisions

There is a deep and mature circuit split on the reach of the savings clause. The Tenth Circuit has rejected the possibility of savings-clause relief for both actual-innocence claims and all sentencing claims, regardless of whether the petitioner's claim was foreclosed by circuit precedent at the time of his first § 2255 motion.  See Prost v. Anderson, 636 F.3d 578, 584 (10th Cir. 2011) ("The relevant metric . . . is whether a petitioner's argument challenging the legality of his detention could have been tested in an initial § 2255 motion."), cert. denied, 132 S. Ct. 1001 (2012).  The only possibility left open by the Tenth Circuit in Prost is that the savings clause may be available "when the application of § 2255(h)'s bar against a second or successive motion for collateral review would seriously threaten to render the § 2255 remedial process unconstitutional," id. at 593, although the Tenth Circuit did not elaborate upon what circumstances would be serious enough to trigger this concern.

In contrast, eight circuits have held definitively that the savings clause allows a district court to entertain an actual-innocence claim.[18]  See Poindexter v.

---

[18]The circuits differ with respect to what constitutes actual innocence.  But, we need not address that distinction to resolve Bryant's case.

Nash, 333 F.3d 372, 378 (2d Cir. 2003), cert. denied, 124 S. Ct. 1486 (2004); In re Dorsainvil, 119 F.3d 245, 251-52 (3d Cir. 1997); In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000); Reyes-Requena v. United States, 243 F.3d 893, 903-04 (5th Cir. 2001); United States v. Peterman, 249 F.3d 458, 462 (6th Cir. 2001), cert. denied, 122 S. Ct. 493 (2001); Brown v. Caraway, 719 F.3d 583, 586-87 (7th Cir. 2013); Marrero v. Ives, 682 F.3d 1190, 1192, 1194-95 (9th Cir. 2012), cert. denied, 133 S. Ct. 1264 (2013);  In re Smith, 285 F.3d 6, 8 (D.C. Cir. 2002); see also Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008), cert. denied, 129 S. Ct. 1363 (2009). These circuits are split on whether sentencing claims may open the savings-clause portal.

The Second, Fourth, and Fifth Circuits limit the reach of the savings clause to actual-innocence claims.  In those circuits, no type of sentencing claim justifies savings-clause relief.  See Poindexter, 333 F.3d at 378 ("The application not only must show that relief is procedurally unavailable under § 2255, but also must assert a claim of actual innocence . . . ."); Reyes-Requena, 243 F.3d at 903-04 (stating the savings clause is available only for an actual-innocence claim based on a Supreme Court decision that has overturned circuit precedent foreclosing the petitioner's claim); United States v. Poole, 531 F.3d 263, 267 n.7 (4th Cir. 2008) ("Fourth Circuit precedent has likewise not extended the reach of the savings clause to those petitioners challenging only their sentence.").  In the Second, Fifth, and Tenth

58

Circuits, prisoners cannot mount a savings-clause challenge to any erroneous sentencing enhancement, whether above or within the otherwise applicable statutory maximum penalty.

The First, Sixth, and Ninth Circuits appear to be in line with this Court's jurisprudence. Those circuits (1) have held that the savings clause is available for actual-innocence claims, (2) have rejected—as this Court did in Gilbert II—the possibility that the savings clause is available for sentencing claims alleging that the district court misapplied the guidelines provisions but imposed a sentence within the statutory maximum penalty, and (3) have reserved the issue regarding sentences above the statutory maximum penalty. See Marrero, 682 F.3d at 1194-95 (noting that "some courts have suggested that a petitioner may qualify for the escape hatch if he received a sentence for which he was statutorily ineligible"—in other words, beyond the statutory maximum—but reserving the question of "whether to endorse" this exception); Trenkler, 536 F.3d at 99 (petitioner's claim was "incompatible with engagement of the savings clause" because it did not "charge that [the] sentence is beyond the statutory maximum for the crimes of conviction" or assert actual innocence); Peterman, 249 F.3d at 462 ("Courts have generally declined to collaterally review sentences that fall within the statutory maximum.").

59

The Seventh Circuit has taken the most permissive position. See Brown, 719 F.3d 583. Rejecting this Court's Gilbert II, the Seventh Circuit held that "a misapplication of the mandatory career offender Guideline presented a cognizable non-constitutional claim . . . [that] resulted in a miscarriage of justice" and thus is "a 'fundamental sentencing defect' justifying successive § 2241 relief under Davenport." Id. at 587. Brown's secondary import is that the Seventh Circuit also will consider savings-clause claims alleging an erroneous application of increased statutory maximums under § 924(e).

The Eighth Circuit has the least developed savings-clause jurisprudence and has neither affirmed nor rejected the savings clause's availability for either actual-innocence or sentencing claims. See Abdullah v. Hedrick, 392 F.3d 957, 960-64 (8th Cir. 2004) (canvassing other circuits' case law but ultimately concluding that the prisoner in that case had had an "unobstructed procedural opportunity" to obtain review of his claim in his first § 2255 motion), cert. denied, 125 S. Ct. 2984 (2005).

Our review of other circuit's law shows most circuits agree about actual-innocence claims but are far from uniform as to whether sentencing claims can pass through the narrow savings-clause portal. And, even those who do not allow guidelines-misapplication claims within the statutory maximum penalty to proceed under § 2255(e) (as we held in Gilbert II), have not answered the § 2255(e)

questions as to a sentence <u>above</u> the statutory maximum penalty.  We now must do so.

**B.    Why § 2255(e) Reaches Bryant's Statutory-Maximum Claim**

As discussed above, all of our cases on point—<u>Wofford</u>, <u>Gilbert II</u>, and <u>Williams</u>—kept open the possibility that the savings clause would allow relief in cases of some limited type of a fundamental sentencing defect.  In <u>Gilbert II</u>, we hinted in "footnote-dicta" that such a "fundamental defect in sentencing" may potentially include an erroneous application of the "violent felony" term in § 924(e) that results in a sentence <u>above</u> the statutory maximum penalty, as shown above.  See <u>Gilbert II</u>, 640 F.3d at 1319 n.20.  For the following reasons, we now hold that § 2255(e) reaches Bryant's pure § 924(e)-<u>Begay</u> claim of illegal detention above the statutory maximum penalty in § 924(a).

First, we have never doubted that the savings clause, at the very least, applies to actual-innocence claims due to a conviction for a non-existent offense.  See <u>Wofford</u>, 177 F.3d at 1244; <u>Gilbert II</u>, 640 F.3d at 1318-19; <u>Williams</u>, 713 F.3d at 1342-43.  After all, the savings clause must apply to some claims not covered by § 2255(h); otherwise, the savings clause would be "rendered meaningless."  See <u>Williams</u>, 713 F.3d at 1342-43.

Second, the plain text of § 2255(e) supports the proposition that the savings clause should not be restricted simply to actual-innocence claims.  The savings

clause makes § 2241 available to a prisoner whose first § 2255 motion was "inadequate or ineffective" to test the legality of his "detention." 28 U.S.C. § 2255(e) (emphasis added). Congress's use of the term "detention" is highly significant to the scope of the savings clause. In other sections of § 2255 and the related statutes, Congress uses different terminology when it wishes to restrict the prisoner's universe of possible challenges solely to actual-innocence claims.

For instance, AEDPA contains two exceptions to the prohibition on second or successive § 2255 motions. One of those exceptions allows a claim based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." 28 U.S.C. § 2255(h)(1) (emphasis added); In re Dean, 341 F.3d 1247, 1248 (11th Cir. 2003) (rejecting a federal prisoner's request for a second or successive § 2255 motion raising a sentencing claim because § 2255's newly discovered evidence exception "does not apply to claims asserting sentencing error"). AEDPA's restriction on second or successive § 2254 petitions for state prisoners contains a similar exception. See 28 U.S.C. § 2244(b)(2)(B)(ii) (permitting a second or successive petition only where, among other things, "no reasonable factfinder would have found the applicant guilty of the underlying offense" (emphasis added)). The use of the term "detention" in the savings clause suggests that

62

Congress intended for at least some species of sentencing claims (other than actual-innocence claims) to justify savings-clause relief.

Section 2255's structure also favors opening the savings-clause portal to claims of an erroneous § 924(e) sentence above the authorized statutory maximum in § 924(a). As this Court explained in Williams, the structure of § 2255 provides two distinct escape hatches or pressure valves (or whatever metaphor one wants to deploy) that a prisoner may use to overcome the bar on second or successive § 2255 motions. The first is the savings clause in § 2255(e), and the second is the limited right for second or successive motions found in § 2255(h). To harmonize the two, and to ensure that § 2255 does not run afoul of the Suspension Clause, we interpret the savings clause to cover some claims that § 2255(h) does not, and vice versa. See Williams, 713 F.3d at 1342-43.

Section 2255(h) is by far the clearer of the two sections and offers two kinds of claims for which a second or successive § 2255 motion is possible: (1) a claim of actual innocence based on newly discovered evidence, as discussed above, 28 U.S.C. § 2255(h)(1); and (2) a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255(h)(2). The purpose behind § 2255(h), to frame it simply, is to make sure that two kinds, and only two kinds, of very serious, substantive claims will receive review on the merits regardless of the

63

posture of the prisoner's case.  Section 2255(h) focuses on the substantive nature of the claim.

Section 2255(e) has a different thrust.  The savings clause is concerned not only with the substantive basis for the claim, but also with the procedural adequacy of the original review of the § 2255 claim.  For this reason, the savings clause permits review of "detention" when the prisoner's first § 2255 motion was "inadequate or ineffective" to test those claims.  The issue is whether the movant had a procedural opportunity to raise his § 924(e) claim in an "adequate and effective" fashion.  This Court's decision in Williams honored this distinction by establishing, as the necessary if not sufficient conditions for receiving savings-clause relief, that a prisoner must demonstrate that his sentencing claim was squarely foreclosed by Circuit precedent at the time of his trial, direct appeal, or first § 2255 proceeding; that the Supreme Court subsequently overruled that erroneous Circuit precedent; and that the Supreme Court decision applies retroactively on collateral review.  Williams, 713 F.3d at 1343.  If there is ever to be any sentencing claim that is serious enough to warrant a second look when the prisoner's first procedural opportunity for review was inadequate or ineffective, an erroneous § 924(e) statutory maximum claim fits the bill.

This Court consistently has drawn a distinction between sentences above the authorized statutory maximum penalty and those beneath that statutory maximum.

64

In Gilbert II, this Court took great pains to make clear that its holding applied only to sentences erroneously enhanced under the sentencing guidelines, not to sentences exceeding the statutory maximum penalty authorized by Congress for the crime of conviction. See Gilbert II, 640 F.3d at 1295, 1306-07, 1312, 1319 n.20, 1323. The concern with an erroneous sentence above the statutory maximum is that the sentencing court "exceeded [the punishment] authorized by the legislature." Jones v. Thomas, 491 U.S. 376, 383, 109 S. Ct. 2522, 2526 (1989); see also United States v. DiFrancesco, 449 U.S. 117, 139, 101 S. Ct. 426, 438 (1980) ("[A] defendant may not receive a greater sentence than the legislature has authorized."); United States v. Bushert, 997 F.2d 1343, 1350 n.18 (11th Cir. 1993) ("It is both axiomatic and jurisdictional that a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute."). Thus, there are serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress.

In this respect, a sentence exceeding the authorized statutory maximum in § 924(a) is more akin to an actual-innocence claim, which every circuit to have considered the savings clause, but the Tenth, acknowledges would qualify under the savings clause. The prisoner who was convicted and sentenced under the § 924(e) statute that the Supreme Court subsequently decides never punished his conduct is being held without authorization by any congressional statute.

65

Similarly, when a prisoner convicted of a § 922(g) crime serves more than the applicable 10-year maximum in § 924(a) due to an erroneous § 924(e) sentence, he too is being detained without authorization by any statute.

Our conclusion today is consistent with, and in no way undermines, our en banc decision in Gilbert II. There, we rested our holding in large part on the finality interests espoused by AEDPA, which were strong enough to override claims of guidelines error within the statutory maximum penalty. See Gilbert II, 640 F.3d at 1309-12. This case does not implicate those finality concerns in the same way. We are not creating a rule that "would apply to every type and kind of [guideline] enhancement, of which there are scores." See id. at 1309. Nor are we permitting "an endless repetition of inquiry into facts and law in a vain search for ultimate certitude." See id. at 1311 (quoting McCleskey v. Zant, 499 U.S. 467, 492, 111 S. Ct. 1454, 1469 (1991)) (internal quotation marks omitted). We are simply recognizing that the savings clause, in addition to § 2255(h), contains a very narrow exception to AEDPA's prohibition on successive collateral relief—an exception that is supported by statutory language in § 2255(e), and one that we have foreseen and preserved since Wofford.

The need to correct a sentence above the authorized statutory maximum penalty weighs significantly heavier against finality interests than the need to amend a within-statutory-maximum sentence that simply might have been lower

66

but for an erroneous guidelines application.  Gilbert II illustrates this point well.

There, we observed that, were we to remand Gilbert's case for resentencing, it was

by no means clear that he would receive a lesser sentence than he was presently

serving, given that the guidelines were no longer mandatory.  See Gilbert II, 640

F.3d at 1304-05.  We explained that the district court, on remand, could easily give

Gilbert an above-guidelines sentence based on the 18 U.S.C. § 3553(a) factors.  Id.

If Gilbert was resentenced to the original 292 months or even life imprisonment,

his sentence "would not be unreasonable or disproportionate to the crime."  Id. at

1305.

　　In stark contrast in this case, we can say with absolute certainty that, on

remand, the district court must, and thus would, give Bryant a lower sentence than

his current term of 235 months.  Indeed, a lower sentence of 10 years is guaranteed

because—in light of Begay, Archer, and Canty—Bryant's authorized statutory

maximum penalty is 10 years, and there is nothing a district court judge could do

to vary upwards above 10 years.  See 18 U.S.C. § 924(a)(2); see also U.S.S.G.

§ 5G1.1(a).  As with cases of proven actual innocence, finality interests must yield

in cases of current sentences proven to be above the statutory maximum penalty

authorized by Congress.  Given the above already-narrowed confines of the

savings clause, there is little undermining of finality interests to grant relief to

prisoners who are serving illegal sentences above the authorized statutory maximum penalty.

## XI.    AMICUS'S ARGUMENTS

The government does not contest that the savings clause applies when and if Circuit precedent foreclosed a petitioner's claim that he lacks the requisite three predicate felonies but the petitioner has now proven that his § 924(e) sentence exceeds the statutory maximum penalty, as described above.  Rather, the government wants a remand to substitute Bryant's burglary conviction, which we denied for the reasons stated earlier.  Amicus counsel was thus appointed to brief and argue on appeal whether the savings clause applies when a prisoner establishes that his sentence exceeds the statutory maximum penalty.  While the amicus offers four well-developed counterarguments, none of them persuade us.

## A.    Mandatory Guidelines Versus Statutory Maximums

First, the amicus asserts that there is no meaningful difference between mandatory sentencing guidelines and sentencing statutes.  However, as discussed above, this Court already has distinguished between the pre-Booker mandatory sentencing guidelines and statutory maximum penalties.  See Gilbert II, 640 F.3d at 1306-07 (explaining that a "statutory maximum sentence" is a "punishment ceiling beyond which no [convicted] defendant . . . may be sentenced" and noting that, where a statute and mandatory guideline sentence are inconsistent, "the guideline[]

68

[sentence must] . . . bend to statutorily prescribed limits, not the other way around"). Because of this distinction, this Court carefully cabined its holding in Gilbert II to sentences that did not exceed the permitted statutory maximum penalty.

There is a significant distinction between a sentence that exceeds the statutory maximum sentence stated in § 924(a) and a sentence that, although enhanced by application of mandatory sentencing guidelines, remains within the permitted statutory maximum penalty. Even in the mandatory-guidelines era, a sentencing judge was bound by the absolute upper-limit of a statutorily authorized maximum penalty. Accord Booker, at 543 U.S. at 234, 125 S. Ct. at 750 (noting that, where a sentencing judge "is bound only by the statutory maximum[,] . . . there [is] no Apprendi problem"). We recognize that Congress made the pre-Booker sentencing guidelines mandatory by congressional statute. See 18 U.S.C. § 3553(b)(1). The guidelines, even if mandatory, do not override, and indeed must yield to, congressionally-enacted statutory maximum penalties. See U.S.S.G. § 5G1.1(a).

Consider the following example: a person convicted of federal bank robbery faces a statutory maximum of 20 years. See 18 U.S.C. § 2113(a). Even under the old mandatory guidelines sentencing scheme, if the prisoner's guidelines range with an erroneous career-offender enhancement exceeded 20 years, the prisoner

69

would still be sentenced to 20 years pursuant to 18 U.S.C. § 2113(a).  See U.S.S.G. § 5G1.1(a) (2001) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); see also Gilbert II, 640 F.3d at 1307 ("To the extent of any inconsistency, the guidelines would have to bend to statutorily prescribed limits, not the other way around.").

Statutory maximum penalties take precedence over sentences set forth in the sentencing guidelines.  This was true even when the sentencing guidelines were mandatory.  A statutory maximum penalty is not on equal footing with the guidelines but are more bedrock, fundamental features of sentences.

## B.    Actual-Innocence Claims

Second, the amicus asserts that there is a critical difference between actual innocence and sentencing error.  The amicus suggest that only those movants who are "innocent of an actual crime" are eligible for the savings clause relief.

It is true that one cannot be actually innocent of a sentencing enhancement. Gilbert II, 640 F.3d at 1320.  However, the savings clause is not limited to actual-innocence claims.  The savings clause applies where a § 2255 motion was "inadequate or ineffective to test the legality of [one's] detention."  See 18 U.S.C. § 2255(e).  As discussed above, the use of the term "detention" strongly indicates that the savings clause covers more than actual-innocence claims.

70

Anticipating this conclusion, the amicus asserts that, even if the savings clause covers some sentencing claims, it does not allow relief here because Bryant's sentence does not exceed the applicable statutory maximum penalty. The amicus argues that there is only one statutory maximum penalty for a § 922(g) crime: life imprisonment. According to the amicus, because the statutory maximum penalty for a § 922(g) crime was always life imprisonment, there was no sentencing error in Bryant's case because his 235-month sentence was less than life in prison. In reaching its conclusion, the amicus relies on Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998).

In Almendarez-Torres, the Supreme Court noted that, in statutes like § 924(e), recidivism is not an element of the offense but is a "sentencing factor." See 523 U.S. at 230, 118 S. Ct. at 1224. Because it is a sentencing factor, the amicus argues that the recidivism enhancement contained in § 924(e) does not define a separate crime. This is true. However, the amicus asks this Court to read into the Almendarez-Torres opinion what is not there: if an unenhanced § 922(g) conviction and an enhanced § 922(g) conviction have the same offense elements, they must also have the same statutory maximum penalty of life imprisonment.

The problem with the amicus's argument is that the language of § 924 contains a separate and distinct statutory maximum penalty. Section 924(a)(2) states that the maximum sentence for a violation of § 922(g) is 10 years. See

71

Turner, 709 F.3d at 1332 ("Had he not been subject to the ACCA enhancement, [the prisoner's] maximum sentence would have been 10 years in prison." (citing § 924(a)(2)). A sentencing judge cannot sentence above this statutorily-imposed maximum threshold unless the sentencing factors contained in § 924(e) exist. Only if such sentencing factors exist is the statutory penalty increased to life imprisonment. If such factors do not exist, the maximum statutory penalty remains—as is clearly stated in § 924(a)(2)—10 years imprisonment. We thus cannot say there is only one statutory maximum penalty of life imprisonment.

Adoption of the amicus's position in the facts of this case would effectively limit the reach of the savings clause to actual-innocence claims of the elements of the underlying criminal offense. If subsequent Supreme Court precedent establishes that the government had to prove an additional element to convict and sentence the prisoner, the prisoner's claim would not fairly be characterized as a sentencing claim. When an element has not been proven, the prisoner has a basis to attack both his conviction and his sentence, not just the sentence. The amicus brief's fallback position is essentially offering just another species of actual-innocence claim as the sole example of the kind of sentencing claim that warrants savings-clause relief.

72

## C.    Statutory Versus Constitutional Claims

Third, the amicus brief warns that allowing the correction of erroneous

§ 924(e) applications via the savings clause would "privilege[] statutory sentencing

error over meritorious constitutional claims" and thereby "frustrate AEDPA's

greater tolerance for the latter."  This argument sounds attractive on its face, but its

key underlying assumption—which we think is wrong—is that the savings clause

merely recapitulates the same limitations imposed by other sections of § 2255.  In

other words, the amicus's logic is that § 2255(h) treats only a small set of

constitutional claims as serious enough to require a second look, and, thus, §

2255(e) must do the same.  Under amicus's reasoning, the savings clause in §

2255(e) cannot allow consideration of mere statutory claims, because such claims

could never be more serious than the myriad constitutional claims that will not pass

muster under § 2255(h)(2).

As discussed above, however, § 2255(e) has a different thrust than

§ 2255(h); its concern is not solely the substantive seriousness of the claim but also

the procedural adequacy and effectiveness of the prisoner's original § 2255 hearing

on that claim.  If § 2255(e) merely recapitulated the same policy concerns as

§ 2255(h), the former would be surplusage in the § 2255 statute.  It is a

fundamental canon of statutory interpretation that this Court should read every part

73

of the statute to have meaning.  See United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir. 1991).

## D.     Tenth Circuit Rule

Fourth, the amicus asserts that this Court should follow the rule articulated by the Tenth Circuit.  See Prost, 636 F.3d at 584.  In Prost, a federal prisoner sought to bring a § 2241 petition claiming statutory innocence based on a new Supreme Court interpretation of a money laundering statute.  636 F.3d at 579-80.  Prior to the Supreme Court ruling that prompted the Prost petitioner to file his § 2241 petition, there was no adverse circuit precedent in the Tenth Circuit that squarely foreclosed his statutory innocence claim, but the petitioner did not assert statutory innocence in his first § 2255 motion.  See id. at 580, 588-90.

The Tenth Circuit concluded that an initial § 2255 motion is not "inadequate or ineffective to test the legality of [a petitioner's] detention" if "a petitioner's argument challenging the legality of his detention could have been tested in [the] initial § 2255 motion."  Id. at 584 (internal quotation marks omitted).  Based on this conclusion, the Tenth Circuit held that the savings clause barred the petitioner's § 2241 petition because he could have raised his statutory innocence claim in his first § 2255 motion.  Id. at 589.  The Tenth Circuit alternatively determined that, even if circuit precedent had squarely foreclosed the petitioner's claim at the time of his first § 2255 motion, § 2255(e) still would bar his § 2241

74

petition because he could have challenged that circuit precedent in his first § 2255 motion. Id. at 590-93.

As a preliminary matter, Bryant and the Prost petitioner are on a different footing. Our Circuit's precedent squarely foreclosed Bryant's claim until after he filed his first § 2255 motion. By contrast, the Prost petitioner's claim was not foreclosed by circuit precedent. The facts in Prost are more similar to the facts in Williams than they are to Bryant's case. The Tenth Circuit in Prost and this Court in Williams reached consistent results in holding that the savings clause does not reach claims that could have been raised in earlier proceedings.

The amicus asks us to look more broadly at the Prost opinion and adopt the Tenth Circuit's alternative conclusion that even if circuit precedent had squarely foreclosed the petitioner's claim at the time of his first § 2255 motion, the savings clause still would bar his § 2241 petition. However, the Tenth Circuit's rationale in that portion of the Prost opinion is somewhat in tension with this Court's precedent. As discussed above, this Court previously established that, for a claim to "pass muster under the savings clause," a Supreme Court decision must have overturned "circuit precedent that squarely resolved the claim so that the petitioner had no genuine opportunity to raise it at trial, on appeal, or in his first § 2255 motion." See Williams, 713 F.3d at 1343 (citing Wofford, 177 F.3d 1236)

(emphasis added).  Our Circuit precedent suggests that a prisoner must have had a genuine opportunity to raise his claim in an earlier proceeding

Under the Tenth Circuit's ruling, the savings clause does not apply if a prisoner had any opportunity—regardless of how long-standing or entrenched prior circuit precedent was—to raise his claim in an earlier proceeding.  The Tenth Circuit's conclusion in Prost that any opportunity for relief is "adequate and effective" to test the legality of one's detention is inconsistent with the principles underlying our Circuit precedent.  See Williams, 713 F.3d at 1348 (stating that what makes the § 2255 proceeding inadequate or ineffective is when "erroneous circuit precedent foreclosed [the petitioner's] argument").  We do not adopt the Tenth Circuit's alternative conclusion from Prost, but follow the analytical requirements in Williams which Bryant has satisfied.

## XII.  SECTION 2241 HABEAS REMEDY

Given Bryant has established that his sentence erroneously exceeds the statutory maximum penalty, the savings clause permits his § 2241 petition to proceed, and he should prevail on his § 2241 claim, our final task is to determine what his § 2241 relief should be in the context of this case.

Bryant's initial pro se brief on appeal "respectfully requests that his sentence be vacated and his case remanded for resentencing without the unlawful Armed Career Criminal Enhancement."  His counseled brief requests this Court to "vacate

the district court's judgment and remand [his] case to the district court with instructions to grant the habeas corpus petition." It also states that Bryant "should have been sentenced to a maximum of ten years." Of course, the government asks us to affirm the dismissal of Bryant's § 2241 petition by letting the government substitute Bryant's burglary conviction on appeal or on remand, but we have already denied that request.

In fashioning § 2241 relief in a case brought under the savings clause, we must consider the "history of and purpose behind § 2255, and its relationship to the habeas remedy," codified in § 2241, which we discussed in Wofford. See Wofford, 177 F.3d at 1238-39. Section 2255 channels a federal prisoner's attack on the validity of his sentence to the initial sentencing court so that, if the defendant establishes a sentencing error, he can be resentenced by the court where the sentencing records and witnesses are located. 28 U.S.C. § 2255(a); see Wofford, 177 F.3d at 1239 (describing purpose behind § 2255's enactment as to avoid "serious administrative problems" encountered by habeas courts in the jurisdiction of federal prisons due to an "inordinate number of habeas corpus actions far from the scene" of the facts, the witnesses, and the records of the sentencing court). After § 2255's enactment, § 2241 habeas petitions, which must be filed in the incarceration district, are generally reserved for challenges to execution of a sentence or the nature of confinement, not the validity of the

77

sentence itself or the fact of confinement.  See Antonelli v. Warden, 542 F.3d 1348, 1352 (11th Cir. 2008); United States v. Plain, 748 F.2d 620, 621 n.3 (11th Cir. 1984).

Although Congress did channel collateral attacks on the validity of a sentence to sentencing courts, Congress still provided one exception: a federal prisoner may resort to § 2241 to attack his conviction or sentence if he satisfies the savings clause.  See 28 U.S.C. § 2255(e).  Thus, we conclude that allowing the § 2241 habeas court itself to reduce Bryant's sentence immediately to the 10-year statutory maximum does not thwart the purpose and division of labor in § 2255.

Indeed, in Bryant's § 2241 case, his sentence exceeds the statutory maximum penalty due to pure § 924(e)-Begay error, and all that is required to correct that statutory error is a reduction to the statutory maximum of 10 years by the district court where the defendant is incarcerated.  See 18 U.S.C. § 924(a)(2); see also U.S.S.G. § 5G1.1(a) (providing that if the statutory maximum sentence is less than the guidelines range, the statutory maximum controls).  There is no need for the § 2241 court or the sentencing court to hold a resentencing hearing or to further determine the appropriate sentencing range within the statutory maximum penalty.  After all, any § 2241 challenge to a sentence that is already below the authorized statutory maximum could not open the § 2255(e) portal.  See Gilbert II, 640 F.3d at 1323.  And, Bryant in a § 2241 petition is not able to attack any

78

misapplication of the guidelines below the statutory maximum. See id.[19] Thus, allowing Bryant's above-statutory-maximum claim to proceed in a § 2241 petition through § 2255(e)'s savings clause and allowing the § 2241 court to reduce Bryant's sentence to the statutory maximum penalty do not undermine the collateral-relief structure built by Congress in § 2255.

## XIII.  RESPONSE TO PARTIAL DISSENT

Although the Court grants Bryant significant habeas relief in this case and reduces his 235-month sentence to 120 months, the partial dissent takes this case as an opportunity to voice again dissatisfaction with our binding precedent.

Our dissenting colleague's arguments about guidelines-calculation errors and granting a full and unrestricted resentencing are, in part, restatements of arguments from her earlier dissenting opinion in Gilbert v. United States (Gilbert II), 640 F.3d 1293 (11th Cir. 2011) (en banc), cert. denied, 132 S. Ct. 1001 (2012). Rather than addressing the partial dissent, we simply respond that our majority opinion follows the legal principles in our binding precedent in Gilbert II, and we adopt here Gilbert II's response to the same type of dissenting arguments made there. See 640 F.3d at 1313-18.

---

[19]As recounted earlier, Bryant's advisory guidelines range was 235 to 293 months' imprisonment. Even without the § 4B1.4 increase to his offense level, Bryant's offense level was 29 and his criminal history category was VI (due to 18 points), yielding a guidelines range of 151 to 188 months' imprisonment, also above the 10-year statutory maximum penalty.

Similarly, our dissenting colleague's arguments about the requirement of circuit-law-foreclosure of a § 924(e) claim at the time of sentencing, direct appeal, and the first § 2255 proceeding are restatements of arguments from her earlier dissenting opinion in Williams v. Warden, 713 F.3d 1332 (11th Cir. 2013). The Williams Court explained (1) why to satisfy §2255(e)'s requirement—that the § 2255 remedy was "inadequate or ineffective"—a petitioner must show his sentencing claim was squarely foreclosed by circuit law at the time of trial, direct appeal, and the first § 2255 proceeding and (2) why letting the § 2255(e) savings clause apply in the broad way the dissent argues would eviscerate the statutory bar on second or successive petitions. See 713 F.3d at 1342-43.

If our Circuit's precedent did not foreclose defendant Bryant's § 924(e) statutory claim at the time of sentencing, direct appeal, and a first § 2255 proceeding, then the remedy in § 2255 was not "inadequate or ineffective" to raise that claim. Williams, 713 F.3d at 1344 & n.4; Gilbert II, 640 F.3d at 1319; see Wofford v. Scott, 177 F.3d 1236, 1244-45 (11th Cir. 1999). This is why, to meet the "inadequate or ineffective" test in § 2255(e), the Williams Court required the defendant to show that he had "no genuine opportunity to raise [his claim] at trial, on appeal, or in his first § 2255 motion." 713 F.3d at 1343. The Williams Court explained: "if we follow the dissent's reasoning to its ultimate conclusion, every § 2255 motion that a panel of this Court comes to believe, years later, is wrongly

80

decided could be revived under § 2241 by virtue of the savings clause. This view is unsustainable because it is wholly inconsistent with the bar on second or successive motions" and "would eviscerate the bar." Id. at 1348 n.7.

Although the partial dissent agrees that relief should be granted, what is most striking and merits some reply is the dissent's fulsome attack on the majority opinion's remedy-holding, despite the fact the majority's careful navigation has secured a safe passage for Bryant through the narrow § 2255(e) portal to substantial § 2241 relief.[20] It is undisputed that § 2243 directs courts to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. Our disagreement is over what remedy the law and justice require to correct the identified error here. And, in that regard, our panel does not write on a clean slate as the dissent would have us do. Importantly, under Gilbert II, Bryant cannot obtain a § 2241 writ through the § 2255(e) portal

---

[20]Pending before this Court are three separate appeals, briefed separately, under three separate appeal numbers involving defendants in three separate criminal cases: Bryant v. Warden, FCC Coleman-Medium, appeal docketed, No. 12-11212 (11th Cir. Mar. 7, 2012), McKinney v. FCC Coleman-Medium, appeal docketed, No. 12-12953 (11th Cir. June 6, 2012); and Mackey v. Warden, FCC Coleman-Medium, appeal docketed, No. 12-14729 (11th Cir. Sept. 13, 2012). This opinion decides Appeal No. 12-11212. While the appeals present some of the same sentencing issues and were scheduled and consolidated for oral argument on the same day, the individual defendants' appeals are to be decided individually and were not consolidated for decisional purposes. And, as to the dissent's claim as to a lack of adversarial arguments, the government's main position is that Bryant's burglary conviction should be substituted for his concealed-firearm conviction and, thus, no illegal detention exists at all.

based on any guidelines-based sentencing errors.[21]  Bryant is entitled to a grant of the writ only because his sentence exceeds the statutory maximum penalty <u>and only to that extent</u>.

Our majority opinion's express holding that the habeas remedy is limited to a sentence reduction to the statutory maximum penalty is precisely what helps open the § 2255(e) portal for Bryant without running afoul of our en banc and other circuit precedent, the statutory bar on successive habeas motions, and the finality interests that Congress incorporated into AEDPA's provisions.  The § 924 error that opens the portal to a § 2241 claim and the nature of the § 2241 relief are inextricably intertwined in this case of <u>statutory</u> sentencing error.

If our panel opinion allowed district courts to wholly resentence Bryant and revisit earlier guidelines calculations, our panel opinion effectively would chart an end-run course around our en banc <u>Gilbert II</u> decision and eviscerate Congress's statutory bar on successive habeas petitions.  To avoid this end-run, the majority opinion harmonizes the law and rationale from <u>Gilbert II</u> with our statutory habeas authority by voiding only that portion of the sentence that is <u>beyond</u> the maximum limits prescribed by law and by <u>expressly refraining</u> from permitting resentencing

---

[21]The dissent acknowledges: "Mr. Bryant's pure <u>Begay</u> error claim is not based on a mistake about the guidelines.  As is well established by now, his claim instead arises from the fact that his sentence exceeds the maximum term of incarceration authorized by Congress." Dissenting Op. at 101.

based on guidelines miscalculations.  Contrary to the partial dissent's argument that we should not reach the remedy issue at all, it makes no sense to explain how and why Bryant is entitled to habeas relief without also telling him and the district court exactly what the scope of that relief is and what it takes to correct the statutory error in his sentence.

Not one of the habeas cases cited in the dissent involves the § 924(e) statutory sentence error here, much less Gilbert II and Williams.[22]  If anything, the decisions cited in the partial dissent that granted the habeas writ often tailored the remedy to remove the particular constitutional or statutory error (or directed that it be removed) as precisely and efficiently as possible.[23]  In the case before us, the § 924(e) statutory error is clear; and, the error can be remedied in a precise way:

_____

[22]The dissent relies on United States v. Triestman, 178 F.3d 624 (2d Cir. 1999), a materially different case.  In the 1999 Triestman case under a mandatory sentencing regime, the district court invalidated a prisoner's separate firearm conviction and resentenced the defendant on his remaining drug conviction without that firearm conviction.  178 F.3d at 628.  The Second Circuit affirmed.  Id. at 626.

[23]See, e.g., In re Bonner, 151 U.S. 242, 257-58, 151 S. Ct. 323, 325-26 (1894) (noting that "in rendering judgment, the court keeps within the limitations prescribed by the law, customary or statutory" and that "[w]hen the court goes out of these limitations, its action, to the extent of such excess, is void" (emphasis added)); Williams v. Singletary, 78 F.3d 1510, 1516-17 (11th Cir. 1996) (instructing the district court to conditionally grant the writ with the condition that the state court either release the prisoner or vacate the prisoner's duplicative conviction and credit the time served for the sentence on that now-vacated conviction to the sentences of the remaining convictions); Williams v. Jones, 571 F.3d 1086, 1088 (10th Cir. 2009) (directing the district court to "impose a remedy that comes as close as possible to remedying the constitutional violation" where counsel rendered constitutionally ineffective assistance by threatening to withdraw if the defendant accepted a plea offer); Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003) (directing "the state to release [the petitioner] within 120 days unless it offers [the petitioner] the same material terms that were contained in [the state's] original plea offer").

reduce the sentence to 10 years to remove the § 924(e) statutory error. With that remedy in place, Bryant's detention is no longer illegal under § 924 and our Circuit precedent.

## XIV.  CONCLUSION

For all the foregoing reasons, we vacate the district court's dismissal of Bryant's § 2241 petition with instructions that the district court grant Bryant § 2241 relief and enter an order stating Bryant's sentence for his § 922(g) conviction is hereby reduced to the 10-year statutory maximum penalty in § 924(a).

**VACATED AND REMANDED WITH INSTRUCTIONS.**

MARTIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the Majority's conclusion that the savings clause in 28 U.S.C. § 2255(e), together with 28 U.S.C. § 2241, give Mr. Bryant a remedy in this case. Mr. Bryant's claim is that he was wrongly sentenced under the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e). His case thus squarely presents the issue left open in our en banc decision in Gilbert: whether § 2241 is available where the asserted error in sentencing resulted in a term of incarceration above the statutory maximum that would have applied but for the error. Gilbert v. United States, 640 F.3d 1293, 1306–07, 1319 n.20 (11th Cir. 2011) (en banc). In other words, this case is about a man who, because of a mistake made by a judge at the time he was sentenced, is now in prison beyond the time allowed by the statute setting his punishment.

The government's concession that savings clause relief is available for pure Begay error is commendable.[1]    It is also consistent with the position it took in Gilbert, where it argued that "[Mr.] Gilbert's guidelines-misapplication claim d[id]

---

[1]  See Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008). While the government argues that savings clause relief is available for pure Begay error, it says that Mr. Bryant's ACCA sentence is still valid because his criminal history still includes three qualifying predicate convictions even absent his carrying a concealed firearm prior conviction. I agree with the Majority that the government may not now substitute in a new predicate offense to maintain Mr. Bryant's ACCA sentence. As the Majority points out, the government waived any argument that Mr. Bryant's prior 1988 burglary conviction could be used as a third qualifying predicate felony under the ACCA at the time he was sentenced. See Maj. Op. at 56–57 (citing United States v. Canty, 570 F.3d 1251, 1257 (11th Cir. 2009); United States v. Petite, 703 F.3d 1290, 1292 n.2 (11th Cir. 2013)).

not present a 'fundamental' sentencing defect . . . because his actual sentence was within statutory limits and could be reimposed today." Br. for the U.S. on Reh'g En Banc at 20, Gilbert, 640 F.3d 1292 (No. 09-12513), 2011 WL 493800, at *20. But the government also told us at that time that "[f]undamental sentencing defects, such as an erroneous ACCA sentence, should be redressable under the savings clause under the same circumstances that would apply to a non-existent-offense claim." Id. So it is not surprising that the government continues to disavow any institutional interest in keeping a person in prison beyond the statutory maximum sentence prescribed by Congress. Indeed, the government has a strong interest in preventing this type of injustice. See Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

If the savings clause means anything in the sentencing context, it must apply to cases in which the sentence exceeds that authorized by Congress. We begin with the precept that federal courts have limited jurisdiction and it is Congress, not the courts, which sets the range of punishment by statute, just as Congress establishes the elements of crimes by statute. See United States v. Lanier, 520 U.S.

86

259, 267 n.6, 117 S. Ct. 1219, 1226 n.6 (1997) ("Federal crimes are defined by Congress, not the courts . . . ."); Whalen v. United States, 445 U.S. 684, 689, 100 S. Ct. 1432, 1436 (1980) ("[T]he power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress."); United States v. Wiltberger, 18 U.S. (5 Wheat) 76, 95 (1820) ("It is the legislature, not the Court, which is to define a crime, and ordain its punishment."). Congress may give federal courts broad discretion to impose a sentence within a statutory range, but separation of powers principles require that the limits of that sentence fall within the parameters set by Congress. See Chapman v. United States, 500 U.S. 453, 465, 111 S. Ct. 1919, 1927 (1991) ("[A] person who has been . . . convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense . . . ."); Ex Parte Lange, 85 U.S. (18 Wall.) 163, 176 (1873) (granting habeas relief to a federal prisoner who had been sentenced to a term of imprisonment and a fine where the statute prescribed imprisonment or a fine); see also McKleskey v. Zant, 499 U.S. 467, 478, 111 S. Ct. 1454, 1462 (1991) (confirming that Ex Parte Lange involved a "sentence[] imposed without statutory authorization").

Where the Supreme Court provides an authoritative judicial interpretation of a substantive criminal statute, like it did in Begay, the Court does not change the meaning of the law in such a way that implicates finality concerns, but rather

establishes what the law has always meant.  See Rivers v. Roadway Express, Inc.,

511 U.S. 298, 312–13 & n.12, 114 S. Ct. 1510, 1519 & n.12 (1994); see also Fiore

v. White, 531 U.S. 225, 228–29, 121 S. Ct. 712, 714 (2001) (holding that it

violates due process to convict a defendant for conduct that a "criminal statute, as

properly interpreted, does not prohibit").  In this way, Begay, Archer,[2] and Canty[3]

tell us that a prior offense for carrying a concealed firearm was never a "violent

felony" under the ACCA, and therefore Mr. Bryant was never an armed career

criminal.   Because he never was an armed career criminal, the District Court never

had jurisdiction to impose the sentence it did.  Certainly our august federal courts

are not without power to remedy a sentence mistakenly imposed by a court that

lacked jurisdiction to impose it.  Indeed it is the responsibility of federal courts to

cure a detention that exceeded its legal limits.

For these reasons, as well as those expressed by the Majority, I agree that the

savings clause must be available to habeas petitioners like Mr. Bryant who can

demonstrate that they were sentenced to a longer term than what Congress

---

[2]  United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (recognizing that Begay is clearly on point and undermined prior circuit precedent to the point of abrogation such that carrying a concealed weapon cannot be considered a "crime of violence" under the career offender guideline in United States Sentencing Guidelines (USSG) § 4B1.2).

[3]  United States v. Canty, 570 F.3d 1251, 1255 (11th Cir. 2009) (applying Archer and Begay to ACCA context and holding "that carrying a concealed weapon is not a violent felony that may be used as a predicate conviction to enhance a defendant's sentence under the ACCA").

provided by statute.  I cannot agree, however, with those portions of the Majority's opinion that go beyond what the law provides or what this case requires.   To this end, I will discuss the three ways in which I believe the Majority's analysis is flawed.

1.       SCOPE OF THE § 2241 HABEAS REMEDY

Part XII of the Majority opinion concludes that reducing Mr. Bryant's sentence to ten years is the remedy.  While I agree this is the proper result for Mr. Bryant here, the Majority's analysis in Part XII goes beyond what is necessary to decide the question his case presents.

a.       Granting The Writ Without Resentencing Is The Appropriate Remedy In Mr. Bryant's Case Because He Has Already Served More Than Ten Years In Prison.

Our panel unanimously agrees that Mr. Bryant's current sentence exceeds his statutory maximum of 10 years under 18 U.S.C. § 924(a).  Mr. Bryant was sentenced on March 15, 2002 to serve 235-months imprisonment as well as three years of supervised release for a single violation of §§ 922(g) and 924(e)(1).  The day he was sentenced, Mr. Bryant was immediately remanded to the custody of the U.S. Marshals to await designation by the Bureau of Prisons.[4]  Thus, from the date of his sentencing until today, Mr. Bryant has already served 4,302 days (or 11

---

[4] Mr. Bryant was initially taken into custody by the U.S. Marshal Service on December 22, 2000, detained, and then released on bond on December 27, 2000.

years, 9 months, and 9 days)—well in excess of the statutory maximum of 10 years.

Because Mr. Bryant has already served more time in prison than authorized by Congress, we should simply grant the writ, vacate the District Court's judgment denying his § 2241 petition, and remand the case to the District Court for the Middle District of Florida. There, the District Court would enter this Court's Order granting the writ and direct the Warden at Coleman Correctional Institution to immediately release Mr. Bryant. See 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.").

Also in light of this fact that he has already served a term beyond what the statute allows, it is not necessary for us to arrive at a sentence for Mr. Bryant. Certainly, I recognize the remedy under § 2241 encompasses more than immediate release—see 28 U.S.C. § 2243 (authorizing federal courts in habeas proceedings to "dispose of the matter as law and justice require"); Wilkinson v. Dotson, 544 U.S. 74, 85–86, 125 S. Ct. 1242, 1250 (2005) (Scalia, J., concurring) (recognizing that § 2243's "dispose of the matter as law and justice require" language has been interpreted "to permit relief short of release" (collecting cases)). But the only remedy now appropriate for Mr. Bryant is his immediate release. Given the statute capping Mr. Bryant's sentence at ten years, and that he has now served close to

twelve years, there would be nothing for a District Court to do at a resentencing.[5]

Mr. Bryant is due for immediate release from the custody of the Bureau of Prisons.

> b. Ruling Out The Possibility Of A Resentencing In Other Cases Is Inconsistent With The Text Of The Statute, Historical And Current Usage, And Equitable Nature Of The Writ.

Having agreed with the Majority that a resentencing is not necessary for

Mr. Bryant, I disagree with its suggestion in dicta that resentencing may never be

necessary: [6]

> There is no need for the § 2241 court or the sentencing court to hold a resentencing hearing or to further determine the appropriate sentencing range within the statutory maximum penalty. After all, any § 2241 challenge to a sentence that is already below the authorized statutory maximum could not open the §

---

[5] Even setting aside the issue of his term of incarceration, there is nothing else, such as an unauthorized term of supervised release, which would require Mr. Bryant to be resentenced. Upon his release, Mr. Bryant will begin serving his three years of supervised release, see 18 U.S.C. § 3624(e), which is an authorized term of supervised release for a conviction under 18 U.S.C. §§ 922(g) and 924(a). See 18 U.S.C. § 3559(a)(3) (classifying offenses with a statutory maximum term of ten years as a Class C felony); 18 U.S.C. § 3583(b)(2) (authorizing a term of supervised release for a Class C felony of "not more than three years"); USSG § 5D1.2(a)(2). There may be cases in which a petitioner's term of supervised release, like his term of incarceration, exceeds that authorized by Congress, but Mr. Bryant's is not one of them.

[6] To the extent the Majority suggests that § 2241 relief could never include a resentencing to what the original and legal sentence should have been, those portions of the Majority's opinion are dicta, not holding. They simply go beyond the peculiar fact pattern presented by Mr. Bryant's case. See Licciardello v. Lovelady, 544 F.3d 1280, 1288 n.8 (11th Cir. 2008) ("Our holding, as always, is limited to the facts before us."); Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006) ("The holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case.").

> 2255(e) portal. See Gilbert II, 640 F.3d at 1323. And, Bryant in a § 2241 petition is not able to attack any misapplication of the guidelines below the statutory maximum. See id. Thus, allowing Bryant's above-statutory-maximum claim to proceed in a § 2241 petition through § 2255(e)'s savings clause and allowing the § 2241 court to reduce Bryant's sentence to the statutory maximum penalty does not undermine the collateral-relief structure built by Congress in § 2255.

Maj. Op. at 79–80 (footnote omitted). There is simply nothing in the statute, our precedent, or that of the United States Supreme Court, which would systematically limit relief in all of these cases to a sentence of ten years—that is, the maximum permitted by the statute.

Further, principles of judicial restraint counsel against our pronouncing a broad categorical rule that may preclude this Court and future District Courts from ordering any remedy other than reducing a petitioner's sentence to the very most time the statute permits. Indeed a display of judicial restraint is especially appropriate here, given that we have not had the benefit of adversarial briefing on the issue of the proper remedy.[7]

---

[7] Neither have we had the benefit of briefing on the question of what is the proper remedy in the two other consolidated cases involving Messrs. McKinney and Mackey. The Majority has set aside these cases for now, but I fear this opinion dooms both men to a 10-year sentence. To the extent the parties to Messrs. McKinney's and Mackey's cases did talk about it, however, their comments support the conclusion that a straightforward resentencing without the ACCA enhancement is the appropriate remedy. For example, the government's joint answer brief in McKinney, No. 12-12953, and Williams, No. 12-12841, states: "The judgment should be vacated, and the cases remanded with instructions to grant the petitions for a writ of habeas corpus and direct that McKinney and Williams be resentenced by the court of conviction without

In any event, the Majority's unjustifiably limited view of the remedy available under § 2241 is not consistent with the text of the statute, historical and current usage, or the equitable nature of the writ. The Majority's analysis fails to recognize that § 2255 was enacted to provide a remedy in the sentencing court exactly equal to the remedy available under § 2241. See Hill v. United States, 368 U.S. 424, 427, 82 S. Ct. 468, 471 (1962) ("[Section] 2255 was . . . intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." (emphasis added)); see also Davis v. United States, 417 U.S. 333, 343, 94 S. Ct. 2298, 2304 (1974) (stating § 2255 provides a remedy "identical in scope to federal habeas corpus").

_____

the ACCA enhancement." Br. for the Resp. Wardens at 54, McKinney, No. 12-12953, & Williams, 12-12841 (Jan. 11, 2013). In the same way, the government's joint supplemental brief in McKinney, 12-12953, and Mackey, 12-14727, concludes: "The judgment denying McKinney's and Mackey's habeas petitions should be reversed and the cases remanded with instructions to grant the writs and direct that the petitioners be resentenced accordingly." Supplemental Br. for Resp. Warden at 30, Mackey, 12-14727, & McKinney, 12-12953 (Aug. 5, 2013). Also, the joint counseled supplemental brief for Messrs. McKinney and Mackey states: "The judgment should be vacated, and the cases remanded with instructions to grant the petitions, and to dispose of the matter as law and justice require by directing that petitioners be resentenced without the ACCA enhancement." (Joint) Supplemental Br. for Pet'rs at 38, McKinney, 12-12953, & Mackey, 12-14792 (June 27, 2013); see also (Joint) Rep. Br. for the Pet'rs at 18, McKinney, 12-12953, & Mackey, 12-14792 (Aug. 19, 2013) (same).

i.    Text of the Statute: 28 U.S.C. § 2243

Federal courts have long enjoyed the power and the duty to "dispose of

[habeas corpus petitions] . . . as law and justice require."  28 U.S.C. § 2243.

Indeed, "[s]ince 1874, the habeas corpus statute has directed the courts to

determine the facts and dispose of the case summarily, 'as law and justice

require.'"  Peyton v. Rowe, 391 U.S. 54, 66–67, 88 S. Ct. 1549, 1556 (1968)

(quoting Rev. Stat. § 761 (1874), superseded by 28 U.S.C. § 2243).  The "law and

justice" requirement has historically been interpreted to confer broad remedial

powers on the federal courts: "[t]he court is invested with the largest power to

control and direct the form of judgment to be entered in cases brought up before it

on habeas corpus."  In re Bonner, 151 U.S. 242, 261, 14 S. Ct. 323, 327 (1894).

"[Section] 2243's delineation of the scope of permissible relief applies to all

federal habeas proceedings, whether the petitioner is in federal or state custody, see

§ 2241(c)."  Wilkinson, 544 U.S. at 87, 125 S. Ct. at 1251 (Scalia, J., concurring).

ii.    Historical and Current Usage

For me, it is important to put Mr. Bryant's case into the proper historical

context.  While Justice Scalia has noted the broad relief now available to habeas

petitioners, this was, of course, not always the case.  "For much of our history, we

interpreted [the habeas statute] . . . to reflect the common-law principle that a

prisoner seeking a writ of habeas corpus could challenge only the jurisdiction of

94

the court that had rendered the judgment under which he was in custody." Wright v. West, 505 U.S. 277, 285, 112 S. Ct. 2482, 2486 (1992). But gradually the category of claims considered to bestow jurisdiction in support of habeas relief grew. Id. For example, as relevant to the pure Begay error we consider here, the Supreme Court in 1873 held that imposition of a sentence above that authorized by statute was recognized as a jurisdictional defect that could be remedied by federal habeas. See Ex parte Lange, 85 U.S. (18 Wall.) at 176.

And just as the category of cognizable habeas claims was once very narrow, so too were the remedies. Again, it is Justice Scalia who explained:

> At the time of [42 U.S.C.] § 1983's adoption, the federal habeas statute mirrored the common-law writ of habeas corpus, in that it authorized a single form of relief: the prisoner's immediate release from custody. See Act of Feb. 5, 1867, § 1, 14 Stat. 386. Congress shortly thereafter amended the statute, authorizing federal habeas courts to 'dispose of the party as law and justice require,' Rev. Stat. § 761. The statute reads virtually the same today, 28 U.S.C. § 2243 ('dispose of the matter as law and justice require'). We have interpreted this broader remedial language to permit relief short of release.

Wilkinson, 544 U.S. at 85, 125 S. Ct. at 1250. Habeas relief was originally confined to orders requiring the petitioner's unconditional release from custody. See, e.g., Ex Parte Frederich, 149 U.S. 70, 77–78, 13 S. Ct. 793, 795–96 (1893); In re Medley, 134 U.S. 160, 173, 10 S. Ct. 384, 388 (1890). If the legal error proved by the petitioner did not render her current custody illegal, she had no remedy.

95

See, e.g., McNally v. Hill, 293 U.S. 131, 138, 55 S. Ct. 24, 27 (1934), overruled by Peyton, 391 U.S. at 67, 88 S. Ct. at 1556.  Conversely, if the error complained of showed the petitioner's custody was illegal, courts assumed that they lacked the ability to order a retrial and had no choice but to order the prisoner released unconditionally, often without prejudice to retrial.  See, e.g., Ex parte Frederich, 149 U.S. at 77–78, 13 S. Ct. at 795–96; In re Medley, 10 U.S. at 173, 105 S. Ct. at 388.  But the habeas remedy evolved over time.  It now accommodates more flexible remedies.  For example, a habeas court may issue a conditional release order, which only requires release of the prisoner if a retrial, resentencing, or other action sufficient to cure the violation does not occur within an allotted period of time.  See Hilton v. Braunskill, 481 U.S. 770, 775, 107 S. Ct. 2113, 2118 (1987) ("Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief.").

Federal courts now recognize the broad use of the writ—for remedies beyond just unconditionally or conditionally terminating physical custody.  As the Supreme Court has told us: "[The Writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful

restraints upon their liberty."  Jones v. Cunningham, 371 U.S. 236, 243, 83 S. Ct. 373, 377 (1963).

So while modern federal habeas corpus practice has moved towards full realization of the statute's "law and justice" command by recognizing a wide variety of appropriate remedial orders,[8] Part XII of the Majority opinion would deprive this Court of all power and flexibility to fashion any remedy other than to reduce a petitioner's sentence to the maximum term of imprisonment permitted by statute (i.e., ten years) for pure Begay error. The Majority's pinched view of our habeas powers and duties is simply contrary to the broad remedial interpretation that has been given to the "law and justice" command in § 2243.  The text of the habeas "statute does not deny the federal courts power to fashion appropriate relief."  Peyton, 391 U.S. at 66, 88 S. Ct. at 1556.

---

[8]  See Wilkinson, 544 U.S. at 85, 125 S. Ct. at 1250 (Scalia, J., concurring) ("We have interpreted this broader remedial language to permit relief short of release."); Dasher v. Att'y Gen., Fla., 574 F.3d 1310, 1318 (11th Cir. 2009) (granting writ and ordering relief of modification of sentence to "time served"); id. ("Our discretion to formulate such a remedy, without disturbing the judgment of conviction, derives from 28 U.S.C. § 2243, which authorizes federal habeas courts to 'dispose of the matter as law and justice requires.'"); see also Boumediene v. Bush, 553 U.S. 723, 779, 128 S. Ct. 2229, 2266 (2008) ("[T]he habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003) ("Conceptually, any habeas remedy should put the defendant back in the position he would have been in if the . . . [constitutional] violation never occurred . . . ." (quotation marks omitted)).

iii.    Equitable Nature of the Writ

Also, to the extent that the Majority implies that the remedy for a pure Begay error is limited to reducing a petitioner's sentence to the statutory maximum, it either does not consider or unreasonably discounts the equitable nature of the writ. The writ of habeas corpus is an equitable remedy. See Gomez v. U.S. Dist. Court for N. Dist. of Cal., 503 U.S. 653, 653–54, 112 S. Ct. 1652, 1653 (1992) (per curiam) ("Whether [a] claim is framed as a habeas petition or as a [42 U.S.C.] § 1983 action, [what is sought is] an equitable remedy"; as a result, equity must be "take[n] into consideration"); Duckworth v. Eagan, 492 U.S. 195, 213, 109 S. Ct. 2875, 2886 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles . . . ." (quotation marks omitted)); Fay v. Noia, 372 U.S. 391, 438, 83 S. Ct. 822, 848 (1963) ("[H]abeas corpus has traditionally been regarded as governed by equitable principles."), overruled in part on other grounds by Wainwright v. Sykes, 433 U.S. 72, 87–90, 97 S. Ct. 2497, 2507–08 (1977). The Supreme Court "repeatedly has recognized that principles of fundamental fairness underlie the writ of habeas corpus." Sawyer v. Whitley, 505 U.S. 333, 351, 112 S. Ct. 2514, 2525 (1992) (Blackmum, J., concurring); Sanders v. United States, 373 U.S. 1, 17, 83 S. Ct. 1068, 1078 (1963).

98

This being the case, traditional principles of equity require us to consider the individual facts and circumstances of a petitioner's case and then fashion the remedy that is proper for him.  See Dasher, 574 F.3d at 1318 (reducing a habeas petitioner's sentence to time served based on counsel's inadequate legal advice to plead guilty without a plea agreement); id. (recognizing that a court's "discretion to formulate such a remedy, without disturbing the judgment of conviction, derives from 28 U.S.C. § 2243").[9]

Mr. Mackey's case illustrates how important it is for us to leave future courts free to fashion the appropriate remedy in the savings clause cases yet to come.  In September 2003, Mr. Mackey was indicted in the Southern District of Florida on a single count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  He pleaded guilty. The presentence investigation report (PSR) set forth that he was subject to an enhanced sentence based on the following three prior convictions:

1.  Robbery
2.  Carrying a concealed firearm
3.  Carrying a concealed firearm

---

[9]  See also Boria v. Keane, 99 F.3d 492, 498–99 (2d Cir. 1996) (granting habeas relief and reducing sentence to time served and discharging petitioner from prison because he had already served sentence "at least twice as long as would have been possible" if trial counsel had not been ineffective in persuading the petitioner to accept a plea offer); Williams v. Singletary, 78 F.3d 1510, 1516–17 (11th Cir. 1996) (granting habeas relief for unconstitutional imposition of cumulative sentences for single incident of criminal behavior and vacating one sentence and crediting of time already served to the other).

Mr. Mackey was sentenced to serve 180-months imprisonment plus four years of supervised release. His guideline range at the time he was sentenced was 180–188 months with the ACCA enhancement. Without the ACCA enhancement, which we now know was wrongly imposed, Mr. Mackey's total offense level was 18, criminal history category II, yielding a guideline range of 30–37 months. Because Mr. Mackey has already served at least 10 years of imprisonment towards his ACCA sentence, we cannot now put him in a position to receive the sentence he should have received the first time around. Were it otherwise, I would argue that he should be resentenced without the ACCA enhancement. We do not administer justice by stopping every defendant whose sentence was so obviously tainted by an illegal ACCA enhancement from being resentenced simply because of our own mistake in defining the term "violent felony" under the ACCA.

### iv.    Reliance on Gilbert

As support for the conclusion that "[t]here is no need for the § 2241 court or the sentencing court to hold a resentencing hearing or to further determine the appropriate sentencing range within the statutory maximum," the Majority opinion reasons, "[a]fter all, any § 2241 challenge to a sentence that is already below the authorized statutory maximum could not open the § 2255(e) portal." Maj. Op. at 79–80 (citing Gilbert, 640 F.3d at 1323). The Majority's reliance on Gilbert misses the mark in several ways.

100

First, any attempt to tether a limitation of the remedy available under § 2241 to the holding or rationale of Gilbert fails on its own terms. Gilbert denied savings clause relief to Mr. Gilbert because he only claimed that his guidelines were misapplied. In contrast, Mr. Bryant's pure Begay error claim is not based on a mistake about the guidelines. As is well established by now, his claim instead arises from the fact that his sentence exceeds the maximum term of incarceration authorized by Congress. This court's ruling in Gilbert explicitly declined to rule on whether savings clause relief was available for pure Begay error. Id. at 1319 n.20. It cannot properly be said, therefore, that Gilbert even considered—much less decided—anything at all about the scope, limit, or propriety of a particular remedy for errors, like pure Begay errors, that are cognizable under § 2241.

Second, once it is established that the remedy under § 2255 is "inadequate and ineffective" under § 2255(e) for pure Begay errors, it follows that the portal to § 2241 is open for those errors. "In a case where the Section 2255 procedure is shown to be 'inadequate or ineffective', . . . the habeas corpus remedy shall remain open to afford the necessary hearing." United States v. Hayman, 342 U.S. 205, 223, 72 S. Ct. 263, 274 (1952). Once the § 2241 portal is open, therefore, the statute seems to me to require us to look at the facts and circumstances of each individual case and "dispose of the matter as law and justice require." 28 U.S.C. § 2243.

101

Third, the potential administrative problems of resentencing some petitioners under § 2241 should not foreclose the possibility of resentencing others in an appropriate case. The statute offers no workload protection for federal courts. To the contrary, our authority to grant the writ of habeas corpus extends to prisoners who are in custody within our jurisdiction at the time the habeas petition is filed. See 28 U.S.C. § 2241(a). In the same way, "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" Rumsfeld v. Padilla, 542 U.S. 426, 442, 124 S. Ct. 2711, 2722 (2004) (quoting 28 U.S.C. § 2241(a)). Again, the reason § 2255 was enacted in 1948 was "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." Hayman, 342 U.S. at 219, 72 S. Ct. at 272 (1952) (emphasis added); Wofford v. Scott, 177 F.3d 1236, 1238–39 (11th Cir. 1999), implied overruling recognized by Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1333 (11th Cir. 2013). In Hayman, the Supreme Court pointed to Walker v. Johnston, 312 U.S. 275, 61 S. Ct. 574 (1941) as an example of the "practical problem presented when an application for habeas corpus alleges a meritorious claim not controverted by the records of the trial court." 342 U.S. at 213, 72 S. Ct. at 269.

Without getting too far into the weeds on Walker, the resolution of that habeas petition required holding an evidentiary hearing in the Northern District of

California even though the events complained of by the petitioner happened in Texas and that is where the federal officers who were witnesses were located.  See Walker, 312 U.S. at 278–82, 286–87, 61 S. Ct. at 576–77, 579; see also Hayman, 342 U.S. at 213, 72 S. Ct. at 269.  Thus, while Walker offers a good demonstration of the inconveniences that § 2255 was enacted to avoid, it also teaches that it is possible to resolve even geographically dispersed (or otherwise complicated) factual claims in the habeas court under § 2241 when necessary.

The same should be true today—notwithstanding the enactment of § 2255— where we determine that § 2255 is inadequate or ineffective.  After all, our Court recognized in Wofford itself that "[t]here was no intent to make the § 2255 remedy any different in scope from the habeas remedy that had previously been available to them."  177 F.3d at 1239; see also Davis, 417 U.S. at 344, 94 S. Ct. at 2304 ("Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions.  On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." (quotation marks omitted)).

Finally, there is persuasive authority outside the Eleventh Circuit for resentencing defendants under the savings clause even after the passage of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241, et seq.

103

For example, in United States v. Triestman, then Circuit Judge Sotomayor held that a District Court had the power to resentence a habeas petitioner on his drug convictions after he successfully challenged his firearm conviction in a § 2241 proceeding on the basis of Bailey v. United States, 516 U.S. 137, 116 S. Ct. 501 (1995).  178 F.3d 624, 628–30 (2d Cir. 1999); cf. Brown v. Caraway, 719 F.3d 583, 596 (7th Cir. 2013) (granting § 2241 relief to a petitioner erroneously sentenced as a career offender for pure Begay type error pre-Booker, and remanding "with instructions to reduce [defendant's] sentence to reflect [the Court's] finding that he is not a career offender within the meaning of [USSG] § 4B1.1").

Mr. Triestman's § 924(c) conviction was vacated in a § 2241 proceeding pursuant to Bailey.  The District Court then recalculated Mr. Triestman's guidelines in such a way that increased his guideline range.  Triestman, 178 F.3d at 628.  Mr. Triestman was resentenced on his unchallenged drug convictions to a term of imprisonment longer that what he had received before getting habeas relief.  The sentencing court reasoned that "the Court's power to fashion appropriate relief is no narrower under § 2241 than it is under § 2255 and that federal courts have broad discretion under the original habeas corpus statute to fashion appropriate relief as law and justice require."  Id. at 627 (quotation marks omitted).  The Second Circuit agreed, stating: "We also see no reason to view a court's remedial

104

powers more narrowly in a § 2241 motion than in a § 2255 motion." Id. at 630.

Indeed, (now) Justice Sotomayor's opinion also indicated the § 2241 court could

rely on the habeas petitioner's original PSR in resentencing him. Id. at 632–34.

Triestman provides more than just a persuasive example that resentencing is an

available remedy under § 2241. It also demonstrates that sometimes it is necessary

and appropriate to recalculate a defendant's sentencing guidelines in a § 2241

proceeding to achieve the purposes of sentencing mandated by Congress in 18

U.S.C. § 3553(a).

## 2.    THE TIME FOR MEASURING FORECLOSURE

My second concern about the Majority's opinion is the announcement of a

five-part test for determining the availability of savings clause relief:

> To show his prior § 2255 motion was "inadequate or ineffective to test the legality of his detention," Bryant must establish that (1) throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed Bryant's distinct prior state conviction that triggered § 924(e) and had squarely foreclosed Bryant's § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a); (2) subsequent to his first § 2255 proceeding, the Supreme Court's decision in Begay, as extended by this Court to Bryant's distinct prior conviction, overturned our circuit precedent that had squarely foreclosed Bryant's § 924(e) claim; (3) the new rule announced in Begay applies retroactively on collateral review; (4) as a result of Begay's new rule being retroactive, Bryant's current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and (5) the savings clause in § 2255(e) reaches

105

his pure § 924(e)-Begay error claim of illegal detention above the statutory maximum penalty in § 924(a).

Maj. Op. at 45–46.  Of course I am aware that in Williams v. Warden, Fed. Bureau of Prisons this Court established that in order for a habeas petitioner to get relief under the savings clause, she must establish that relief was foreclosed to her, by binding circuit precedent, not only at the time of the first § 2255 motion, but also at the time of the trial and the time of the direct appeal.  713 F.3d 1332, 1349–50 (11th Cir. 2013).  As I have said before, I read nothing in the statute which requires this.  See Williams, 713 F.3d at 1350–56 (Martin, J., dissenting).  I adhere to my dissenting views on this subject in Williams.  Id.

The savings clause simply provides that a § 2241 petition "shall not be entertained if it appears that the applicant has failed to apply for relief . . . to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255(e).  Nowhere in this savings clause provision did Congress mention that in order to get relief now, a petitioner had to have been foreclosed from getting relief the time of trial, and sentencing, and his direct appeal.  The statute only refers to the relevant time period as the denial of the § 2255 motion (if one was filed) and the present.  Based on my reading,

106

therefore, the relevant point for measuring circuit foreclosure is at the time the first § 2255 motion was adjudicated, not the time of sentencing or direct appeal.[10]

Once again, one of our three consolidated cases (McKinney v. FCC Coleman, No. 12-12953), demonstrates the denial of justice that can result from requiring foreclosure of the habeas claim at the time of trial and direct appeal. Circuit precedent did not foreclose the argument that a prior offense of carrying a concealed firearm was not a "violent felony" at the time of Mr. McKinney's trial and direct appeal. He raised the issue at his trial and in his direct appeal. In fact, it was his case (specifically that of his co-defendant) that established the circuit precedent that foreclosed him from raising the issue at the time of his first § 2255 motion. See United States v. Hall, 77 F.3d 398, 401–02 (11th Cir. 1996) (holding that carrying a concealed weapon in violation of Florida law constituted a "violent felony" under the ACCA), abrogation recognized by Williams, 713 F.3d at 1346.

And our Court will now likely deny relief to Mr. McKinney because the relief he seeks was not foreclosed to him at the time of his trial and direct appeal. And if we do this, we will do so in spite of the fact that the government has not

---

[10]  Of course, whether a defendant preserved his objection at the time of sentencing and direct appeal may be relevant to the non-jurisdictional determination of procedural default. See, e.g., Sawyer v. Holder, 326 F.3d 1363, 1366–67 (11th Cir. 2003) (applying the procedural default rule to a § 2241 petition); see also Shukwit v. United States, 973 F.2d 903, 904 (11th Cir. 1992) (recognizing that procedural default rule is not jurisdictional, but is an affirmative defense that can be waived).

107

argued that this should preclude Mr. McKinney from savings clause relief. Indeed quite to the contrary, the government's position is that Mr. McKinney is entitled to savings clause relief. Surely equity requires relief for Mr. McKinney when he: preserved his ACCA argument at trial; pursued it on direct appeal; and we wrongly decided the issue against him, thereby mistakenly establishing the circuit precedent that carrying a concealed firearm is a violent felony under the ACCA. The Majority Rule would deny him relief because he was the first to raise the issue. The proper inquiry under the savings clause should be the one intended by Congress: whether the "remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). We ignore the mandate of the statute when we also require that the direct appeal be ineffective or inadequate.

### 3. WHO DECIDES WHEN CIRCUIT PRECEDENT IS BUSTED

My final concern relates to the Majority's apparent endorsement of the view that, "[u]nder Williams's analysis, circuit precedent would still 'squarely foreclose' any Begay-based sentencing claim unless and until Begay's holding was extended to a discrete situation involving a specific prior state conviction." Maj. Op. at 48. While I agree that Begay did not abrogate "all of this Court's pre-Begay violent felony jurisprudence," Maj. Op. at 47 (quoting Williams, 713 F.3d at 1347), I do not agree that savings clause relief is only available after this Court recognizes that

108

<u>Begay</u>, or any other retroactively applicable Supreme Court decision, has busted circuit precedent.

Certainly, explicit recognition by this Court that a Supreme Court decision abrogated a prior precedent would be sufficient.  <u>See, e.g.</u>, <u>Archer</u>, 531 F.3d at 1352 (holding that <u>Begay</u> "is clearly on point and has undermined <u>Gilbert</u> to the point of abrogation").  But express abrogation by us may not always be necessary.  To the extent the Majority opinion implies otherwise, it suggests that District Courts are not required to apply controlling Supreme Court precedent unless and until this Court first recognizes that the Supreme Court has abrogated our own prior precedent.  However, "[a] circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts."  <u>McGinley v. Houston</u>, 361 F.3d 1328, 1331 (11th Cir. 2004).  When the Supreme Court announces new rules of law, including retroactively applicable cases involving statutory interpretation, District Courts are bound by those decisions, from the date of the Supreme Court's decision forward.

4.    CONCLUSION

For the reasons I have discussed here, I concur with the Majority's conclusion that § 2241 relief is available to Mr. Bryant because he was sentenced above the statutory maximum.  I dissent to those portions of the Majority's opinion that go beyond what the statute provides in narrowing both the class of prisoners

who stand to benefit from savings clause relief for pure <u>Begay</u> errors and the

remedy available to them once they get that relief.